**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN DOES #1-7, individually and on behalf of all others similarly situated** | § § § § | **Case No. :** 3:18-cv-629 |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CLASS ACTION COMPLAINT** |
| **GREG ABBOTT, Governor of the State of Texas, and COLONEL STEVEN MCCRAW, Director of the Texas Department of Public Safety,** | § § § § § | |
| **Defendants.** | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS TO U.S. CONSTITUTION (CIVIL RIGHTS) AND DECLARATORY RELIEF**

Comes now Plaintiffs, John Does #1-7, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), through their attorney, Teri Estes-Hightower, PLLC, complain of the Defendants as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs, John Does #1-7, are Texas residents who have been retroactively required to comply with Texas' Sex Offender Registration Plan (hereinafter "TSORP") for the rest of their lives.[1]

2. The Plaintiffs were all charged and convicted before TSORP 2017 came into effect.

3. Under TSORP 2017, the Plaintiffs have been and will be subjected to constant supervision; required to report frequently in person; restricted in their ability to travel; prohibited from engaging in many common occupations of life; limited in their rights to free speech; identified publicly and falsely as dangerous; as well as subjected to a vast array of state-imposed restrictions that encompass virtually every facet of their lives. The Plaintiffs must comply with these extensive restrictions and obligations for as long as they live, or face criminal sanctions of up to 20 years of imprisonment.[2]

---

[1] *See* Tex. Code Crim. Proc. art. 62.000 et seq., *as amended* (LexisNexis 2017).
[2] *See* Tex. Penal Code § 22.011(f) (LexisNexis 2017).

4. TSORP 2017 violates Plaintiffs' fundamental rights to travel, work and speak without being narrowly tailored to meet a compelling state interest; and artificially categorizes Plaintiffs into tiers of present dangerousness while imposing varying levels of restraints and disabilities based on those categories without pre- or post- deprivation safeguards.

5. TSORP 2017 imposes such extensive and punitive restrictions on the plaintiffs that it violates the constitutional prohibition on ex post facto laws.

6. Further, many of the provisions of TSORP 2017 are void for vagueness. The plaintiffs are essentially strictly liable for complying with a sweeping and complex law, even though the language of the law does not provide clear notice of what is prohibited or required, either for those subject to it or for those who enforce it, making full compliance with the law impossible.

7. Plaintiffs bring this action under 42 U.S.C.S. §§1983[3] and 1988[4] and seek declaratory and injunctive relief barring application of those provisions that restrict or prohibit the exercise of their fundamental rights.

## JURISDICTION

8. Jurisdiction in this district is proper under 28 U.S.C.S. §§1331[5] and 1343[6] because the plaintiffs seek redress for the deprivation of rights secured by the U.S. Constitution Article III.[7] All Plaintiffs are directly affected by both the Federal Sex Offender Registry as well as the Texas Sex Offender Registry and the accompanying laws for both thereby satisfying the standing requirements for Article III.[8] The Plaintiffs' federal claims are brought under 42 U.S.C.S. §1983.[9]

9. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C.S. §§2201-2202[10], by Fed. R. Civ. P. 57[11] and 65[12], and by the legal and equitable powers of this Court.

10. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C.S. §1391(b)[13].

## THE PARTIES

### John Doe #1

11. Plaintiff John Doe #1 is a 67-year-old residing in the State of Texas.

---

[3] *See* 42 U.S.C.S. § 1983 (LexisNexis 2017).
[4] *See* 42 U.S.C.S. § 1988 (LexisNexis 2017).
[5] *See* 28 U.S.C.S. § 1331 (LexisNexis 2017).
[6] *See* 28 U.S.C.S. § 1343 (LexisNexis 2017).
[7] *See* U.S. Const. art. III, § 2.
[8] *See* U.S. Const. art. III, § 2.
[9] *See supra* note 4.
[10] *See* 28 U.S.C.S. §§ 2201-2202 (LexisNexis 2017).
[11] *See* Fed. R. Civ. P. 57.
[12] *See* Fed. R. Civ. P. 65.
[13] *See* 28 U.S.C.S. § 1391(b).

12. On or around August 8, 1967, Mr. Doe #1, who was 16 years old and a certified adult at the time, was driving around with friends. As Mr. Doe #1 had been drinking, he fell asleep in the car and when he awoke, a 27-year old female was with them. At the time, he was not sure whether she had consented to having sexual relations with him. According to his friends, she had consented. However, when he asked her, she neither said yes nor no. Mr. Doe #1 later realized that she had most likely been traumatized while he was asleep and therefore had not consented.

13. Mr. Doe #1 pled not guilty to the charges on February 29, 1968 and was sentenced to 99 years in the Texas Department of Corrections. Then on December 3, 1968, he was granted a new trial and spent 5 years in the Dallas County jail system awaiting this new trial, which occurred on March 21, 1972. He was again, found guilty of rape and sentenced to 99 years in the Texas Department of Corrections. His conviction was affirmed on appeal on December 5, 1973.

14. Mr. Doe #1 was given parole in December 1978, after having served 11 years.

15. Mr. Doe #1 has not been arrested or convicted of any crimes since his 1972 conviction and has a very good prison record. Not only that, Mr. Doe #1 has a good parole record as well by regularly meeting with his parole officer after being paroled in 1978.

16. At the time Mr. Doe #1 was convicted, Texas did not have a sex offender registry. He therefore did not receive, and could not have received, any notice that his conviction would subject him to lifetime registration under TSORP. In 2003 Mr. Doe #1 met with his parole officer and was told that he was now required to register as a sex offender. This is the result of the 1997 amendment to TSORP,[14] which applied TSORP retroactively to convictions dating back to 1970.

17. Under TSORP 2017, Mr. Doe #1 is classified as a Tier III offender and required to register annually, in person, for the rest of his life.[15]

18. After his release from prison in 1978, Mr. Doe #1 has gone on to live a productive life. He has gotten married, raised children, and up to 2002, when he was required to register under TSORP, was self-employed in the barber and beauty shop industry.

19. However after Mr. Doe #1 appeared on the registry and information about him and his now 50-year old crime became public over the Internet, he was not able to renew his lease for his then existing barbershop. He has also not been able to obtain a new lease in an existing building, thus becoming unemployed as well as unemployable.

20. Further, since appearing on the registry, Mr. Doe #1 has been unable to obtain new and different housing from that in which he presently lives. On each occasion, Mr. Doe #1's application for a new apartment was rejected, and on more than one occasion, he was asked to leave the grounds of the premises. Now, Mr. Doe #1, in his late 60s, has no choice but to live in a

---

[14] *See* Tex. Code Crim. Proc. art. 62.000 et seq., *amended by* Act of June 13, 1997, 75th Leg., R.S., ch. 668, 1997 Tex. Gen. Laws, 2253, http://capitolresearch-texas.com/reports/law/sex_1997a.html.

[15] *See* Tex. Code Crim. Proc. art. 62.007(c)(3), 62.101 (LexisNexis 2017).

high crime neighborhood. Recently, a stray bullet, fired in the neighborhood, passed through an exterior wall into his apartment, coming to rest in the wall of his living room, a short distance from where he was sitting at the time.

21. Mr. Doe #1, at the age of 69 and clearly not a threat to reoffend, will be required to register under TSORP 2017 for the rest of his life.

**John Doe #2**

22. Plaintiff John Doe #2 is a 68-year old residing in the state of Texas.

23. In 1987, when Mr. Doe #2 was 38 years old and resided in the state of Florida, he owned and operated a chain of health clubs, one of which was located in Madison, Wisconsin.

24. In February 1987, while on business in Wisconsin, Mr. Doe #2 was arrested for second-degree rape and was convicted of sexual assault on June 1, 1988 after a trial. He was sentenced to four years in prison.

25. Mr. Doe #2 was released from prison in or around 1991 before either Wisconsin or Texas had enacted sex offender registries. The state of Wisconsin enacted its sex offender registry in 1993 but did not apply it retroactively so Mr. Doe #2 was not required to register while living in Wisconsin.

26. In 1997, Mr. Doe #2 moved to Dallas, Texas to run 9 women's health clubs. At the time, the version of Texas' sex offender registry that had been enacted did not require him to register because his conviction predated the registry law.

27. Mr. Doe #2, presently 68 years old, led a productive life since his release. He has lived in Texas continuously for the past 21 years, and has been either employed or self-employed until he was forced to retire at the age of 65 because of the registry. The registry has been an obstacle for Mr. Doe #2 to even gain employment outside of the state of Texas.

28. Mr. Doe #2 has not been charged with or convicted of any crime since his 1987 Wisconsin conviction.

29 At the time of Mr. Doe #2's conviction, neither the state of Wisconsin nor the state of Texas had a sex offender registry. He therefore did not receive, and could not have received, any notice that his conviction would subject him to registration on the sex offender registry.

30. In fact, Mr. Doe #2 was unaware that he was required to register as a sex offender in the state of Texas until he was stopped by authorities for a traffic infraction in 2011.

31. Under TSORP 2017, Mr. Doe #2 is classified as a Tier III offender.[16] Even though Mr. Doe #2 is 68 years old, he must comply with all TSORP 2017 requirements for the rest of his life.[17]

**John Doe #3**

---

[16] *See* Tex. Code Crim. Proc. art. 62.007(c)(3) (LexisNexis 2017).
[17] *See* Tex. Code Crim. Proc. art. 62.101 (LexisNexis 2017).

32. Plaintiff John Doe #3 is a 44-year old residing in the state of Minnesota, but due to the arbitrary and capricious acts of Defendants, is still subject to TSORP 2017.

33. In December 1991, Mr. Doe #3 was 18 years old and living in rural Texas. Although he was 18 years of age, his therapist concluded that he was mentally much younger. Mr. Doe #3 was a senior in high school, at the time, and was dating a local 13-year old girl. Both Mr. Doe #3 and this girl had known each other for years. After attending a Christmas party at the girl's home, they then engaged in sexual relations.

34. Mr. Doe #3 was then arrested and charged with sexual assault. In 1993, Mr. Doe #3 was granted a deferred adjudication under the Texas Code of Criminal Procedure section 42.12[18] as part of a plea deal. Under Texas law at the time, the successful completion of a period of community supervision would result in Mr. Doe #3's case being dismissed and his record sealed.

35. Mr. Doe #3's guilty plea was based on the state's promise that his case would be dismissed, under the deferred adjudication statute,[19] and thereafter his record sealed. At no time before his plea, was Mr. Doe #3 ever informed that he was required, or may in the future be required, to register as a sex offender. At no time before his plea was Mr. Doe #3 ever informed that information about his case could be posted on a public Internet-based sex offender registry (which at the time did not exist).

36. In 2003, after Mr. Doe #3 completed 10 years of court ordered community supervision and had his case dismissed, he was informed that he was subject to registration as a sex offender even though he had not been convicted of a sex offense. Incredibly, Mr. Doe #3 was required, under TSORP, to register as a sex offender for the rest of his life.

37. The requirement that Mr. Doe #3 register as a sex offender was contrary to all reasonable legal expectations he had when he was granted deferred adjudication in 1993.

38. Notwithstanding, Mr. Doe #3 went on to lead a productive life. He served in both the Naval and Air Force reserves and on active duty in Afghanistan and Kuwait. In 2004 Mr. Doe #3 married and moved to Minnesota and since then has attended college, obtained a Bachelors degree, is in current pursuit of a Masters degree, and has three children.

39. Mr. Doe #3 was required to register as a sex offender in Minnesota until 2006 when his obligation to register was discharged by the state of Minnesota.

40. However, in 2013, Texas placed Mr. Doe #3 back on its Registry due to software updates with TCIC/NCIC FBI Interface. Even after admitting the technical error, the Texas Department of Public Safety refused to remove Mr. Doe #3 from the Registry. This injustice caused Mr. Doe #3 to receive a general rather than an honorable discharge from the Air Force in 2015.

---

[18] *See* Tex. Code Crim. Proc. art. 42.12 *repealed by* Acts 2015, 84th Leg., ch. 770, § 3.01, 2015 Tex. Gen. Laws 2299 (LexisNexis 2017).
[19] *See* Tex. Code Crim. Proc. art. 62.301 (LexisNexis 2017).

41. The state of Texas' Department of Public Safety continues to decline to remove Mr. Doe #3 from the state registry and has informed him that the state of Texas will continue to publicly disseminate his information over the Internet, despite Texas having no jurisdiction over him.

42. Because Mr. Doe #3 continues to be publicly registered by the state of Texas as a sex offender, he has been required to depart from the Air Force and has lost other employment. But for the fact that Mr. Doe #3 is publicly listed on TSORP 2017, employers, landlords and the public would be unaware of his dismissed case or its underlying facts, which was the previous deal that was offered to and accepted by Mr. Doe #3 when agreed to accept the deferred adjudication of his case.

43. Mr. Doe #3 has no criminal convictions.

**John Doe #4**

44. Plaintiff John Doe #4, a 42-year old, resides in the state of Texas.

45. On April 19, 1996, Mr. Doe #4 pled guilty to two charges of sexual assault of a child and indecency with a child.

46. Mr. Doe #4 was 19 years old at the time he was charged. The charges alleged that he fondled his two cousins, who at the time were 15 and 11 years old. In or around April 1996 he was sentenced to four years imprisonment.

47. At the time Mr. Doe #4 pled guilty, the existing sex offender registry was not retroactive and Mr. Doe #4 was not informed that he would be required to register as a sex offender upon the termination of his term of imprisonment in 1999.

48. Since the time of his release, Mr. Doe #4 has been categorized as a "high risk" Tier I offender; and as such, is required to register in person every 90 days at his local police department.

49. Pursuant to Texas law, not only is Mr. Doe #4's personal information made public over the Internet (*e.g.* his name, address and photograph, along with details of his offense) but local police officers also distribute the information, in person, to his neighbors, local school officials, local daycare workers, and others in his community.[20]

50. In addition, should Mr. Doe #4 want to vacation with his family or travel to another state to see his relatives, he not only must inform his local registry officials in person but also upon his arrival at his out-of-state destination must inform the local police of his presence. At the end of his stay, which could be a few days later, Mr. Doe #4 is required to again report to the local police department at his destination and inform them that he is leaving. In turn, his local police department will be informed of him returning. Upon his arrival home, he again is required to report to his local police department to inform the authorities of his return.

---

[20] *See* Tex. Code Crim. Proc. art. 62.056 (LexisNexis 2017).

51. Mr. Doe #4 was never provided with a hearing or any other means through which he could contest his categorization as a Tier I dangerous sex offender.

52. Further, Mr. Doe #4 is hopelessly unemployed. A former construction worker, Mr. Doe #4 has not been able to find employment, except for a minimum wage job, in the last nine years. The Texas registry prohibits him from taking employment for which he would otherwise be eligible to obtain and the state has not enacted any other legislative qualifications or means for employment besides this registry. Thus, Mr. Doe #4 was not provided with due process of law before the denial of his right to pursue common employment.

53. Upon information and belief, Mr. Doe #4 has not otherwise been arrested or convicted of any other crimes.

**John Doe #5**

54. Plaintiff John Doe #5 is a 55-year old construction worker who has never been convicted of a crime nonetheless, is subject to the restraints and disabilities imposed by Chapter 62 of the Texas Criminal Code.

55. Mr. Doe #5 was granted a deferred adjudication in 1992, for sexual indecency with a child/sexual touching. Mr. Doe #5 successfully completed four years of community service and his case was dismissed in 1996. He is required to register as a sex offender for the rest of his life.

56. Mr. Doe #5 is a boilermaker and regularly works on large construction sites around the state of Texas and nationwide. Mr. Doe #5 regularly receives phone calls from his employer directing him to report to work sites around the country to perform specific work tasks at construction sites. Mr. Doe #5's work assignments can last from several days to several months.

57. TSORP 2017 requires Mr. Doe #5 to notify his local police department each time he leaves town to work for more than 48 hours. Mr. Doe #5 is required to inform his local compliance officer where he is going and how long he will be gone. Upon his arrival at his temporary destination, Mr. Doe #5 is required to register, even when he is only at that location for as little as 48 hours.

58. As is the case in many of Mr. Doe #5's work assignments, time is of the essence. In his hurry to fulfill his work obligation, to get from one location to another, he is greatly concerned that he will either negligently fail to register or otherwise not provide the proper notification which would subject him to up to 20 years of imprisonment.[21]

59. The burden that the registry places on Mr. Doe #5 has caused him to reject employment opportunities and constantly subject him to the worry that a police officer of a small town in which he is working will decide to visit his worksite and expose Mr. Doe #5 as a sex offender, costing him either that specific work assignment or his employment in general.

60. On information and belief, but for Mr. Doe #5's 1991 arrest, he has not otherwise been arrested and has never suffered a criminal conviction.

---

[21] *See supra* note 3.

**John Doe #6**

61. Plaintiff John Doe #6 is a 47-year old who was convicted of both sexual assault and aggravated sexual assault on November 10, 1992 on the complaint of his wife. Mr. Doe #6 is categorized as a Tier I offender by TSORP 2017 and is required to report in person every 90 days.[22]

62. Mr. John Doe #6 suffers from a serious bi-polar disorder for which he receives treatment and medication on a monthly basis.

63. As a result of his bipolar disorder, Mr. Doe #6 is 100% disabled and receives Social Security disability benefits.

64. In or around October 2016, Mr. Doe #6 was suddenly evicted from his housing and was forced to take temporary refuge in a storage unit. In the resulting confusion of being uprooted from his home of several years, Mr. Doe #6 lost track of his medication and suffered a psychotic breakdown.

65. As a result of the changes in Mr. Doe #6's living situation, in combination with the temporary but serious change in his mental status, he was eight days late in notifying the authorities of his change of address.

66. Mr. Doe #6 was charged with failing to register and now, after taking a plea deal, is facing 2 years of incarceration. At no time before his October 2016 eviction had Mr. Doe #6 failed to register on time.

**John Doe #7**

67. Plaintiff John Doe #7 is a 42-year-old who now resides in Texas. On September 16, 1997 while living in Oregon, Mr. Doe #7 was charged with as well as pled guilty to Oregon's charges of rape in the third degree, also known as statutory rape.[23] At the time of the offense, Mr. Doe #7 was in college and did not appreciate the youth of the victim who was 16 years old.

68. After his conviction, Mr. Doe #7 received probation for 36 months, or 3 years, and was not required to adhere to the public notification provision in either Nevada or Oregon. However, under TSORP 2017, Mr. Doe #7 is required to comply with the public notification provision[24] and this has publicized his information to third party companies, which in turn is causing him to suffer greatly. It has also resulted in him being listed on the national sex offender registry.

69. In August 2015, Mr. Doe #7 relocated to the state of Texas and, under TSORP 2017, was required to register as a sex offender.

---

[22] *See* Tex. Code Crim. Proc. art. 62.007(c)(1), 62.058 (LexisNexis 2017).

[23] *See* OR. Rev. Stat. Ann. § 163.355 (LexisNexis 2017).

[24] *See* Tex. Code Crim. Proc. art. 62.056 (LexisNexis 2017).

70. After registering under TSORP 2017, Mr. Doe #7 and his family were evicted from the housing they had obtained in Austin, Texas based solely on the fact that he was a registered sex offender.

71. Thereafter, Mr. Doe #7 who had been steadily employed since graduating from college was unable to find work due to his appearance on the sex offender registry and was now required to start his own small business in order to support his family.

72. On two separate occasions, Mr. Doe #7 was denied a small business loan by lenders who cited his presence on the sex offender registry as the reason he was denied a loan.

73. Due to Mr. Doe #7 having to register on the National Sex Offender Registry, he is not allowed to enter the school premises for parent-teacher conferences, sport events held at the school, or any kind of school activities. This has damaged his personal life by not allowing him to have any real involvement with his children's education and extracurricular activities. He has been forced to make unnecessary arrangements in order for him to find out how his children are doing in school including having family members meet with his children's teachers.

74. Mr. Doe #7 has no other arrests or convictions.

## THE DEFENDANTS

### Governor Greg Abbott

75. Defendant Greg Abbott is the governor of Texas. He is being sued in his official capacity.

76. Pursuant to Article IV of the Texas Constitution, as governor, the executive power of the state vests in Defendant Abbott.[25] The Texas Constitution further provides that the governor shall take care that applicable federal and state laws are faithfully executed.[26] Defendant Abbott is ultimately responsible for the enforcement of the laws of the state and for supervision of all state departments, including the Texas Department of Public Safety.

77. The Governor is an appropriate defendant in a case challenging the constitutionality of a state statute.

### Colonel Steven McCraw

78. Defendant Colonel Steven McCraw is the director of the Texas Department of Public Safety (hereinafter "DPS"). He is being sued in his official capacity.

79. The DPS maintains Texas' Sex Offender Registration Plan.[27] The DPS' responsibilities include enforcing TSORP 2017, maintaining the state's database of sex offenders, maintaining an online public sex offender registry, registering offenders (along with other law enforcement

---

[25] *See* Tex. Const. art. IV (LexisNexis 2017).
[26] *See* Tex. Const. art. IV, § 10 (LexisNexis 2017).
[27] *See supra* note 1.

agencies), developing registration forms, providing statutorily required notices to registrants, and coordinating with national law enforcement as well as the national sex offender registry.[28]

80. The director of DPS is an appropriate defendant in a case challenging the constitutionality of Texas' Sex Offender Registration Plan.

## FACTUAL ALLEGATIONS: HISTORICAL EVOLUTION OF TSORP 2017

81. Texas passed its first sex offender registry law in 1991.[29] Before that time, Texas did not require anyone to register as a sex offender for any purpose.

82. The 1991 statute established a private database containing basic information about individuals convicted of sex offenses.[30] Registration information was available only to law enforcement, was exempt from all public disclosure, and a person who disclosed registry information to the public was guilty of a class B misdemeanor.[31]

83. The statute did not require regular verification or reporting. After completion of the initial registration, the only additional obligation was to notify local law enforcement within seven days of a change of address, which did not need to be done in person.[32]

84. The duty to register, under the statute, ended on the day the person was discharged from parole or probation.[33]

85. The statute applied only to individuals whose convictions or adjudication occurred after the statute was enacted on September 1, 1991, but only if they were still incarcerated, on probation or parole, or under juvenile probation.[34] The failure to register was a misdemeanor.[35]

86. Since that time, TSORP has been repeatedly amended, with each amendment imposing a stricter regime with new burdens on registrants, and covering more people and conduct.[36]

---

[28] *See id.*

[29] *See* Act of May 25, 1991, 72nd Leg., R.S., ch. 572, § 1, 1991 Tex. Gen. Laws 2029-32 (*codified at* Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1).

[30] *See* Act of May 25, 1991, 72nd Leg., R.S., ch. 572, 1991 Tex. Gen. Laws 2029-32 (*codified at* Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1).

[31] *See* Act of May 25, 1991, 72nd Leg., R.S., ch. 572, § 5, 1991 Tex. Gen. Laws 2029-32 (*codified at* Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1).

[32] *See* Act of May 25, 1991, 72nd Leg., R.S., ch. 572, § 8(a)-(b), 1991 Tex. Gen. Laws 2029-32 (*codified at* Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1).

[33] *See* Act of May 25, 1991, 72nd Leg., R.S., ch. 572, § 9(a)-(b), 1991 Tex. Gen. Laws 2029-32 (*codified at* Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1).

[34] *See supra* note 19.

[35] *See* Act of May 25, 1991, 72nd Leg., R.S., ch. 572, § 7(b), 1991 Tex. Gen. Laws 2029-32 (*codified at* Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1).

[36] *See* Acts of 2015, 84th R.S. ch 770, 2015 Tex. Gen. Laws 2299.

87. In 1995, the legislature amended the statute to require law enforcement agencies to notify the public of the presence of certain offenders in the community by newspaper, while continuing the policy of the registrants' anonymity.[37]

88. In 1997, the statute was amended to apply retroactively to persons who had been convicted of a reportable offense since 1970, both in Texas and out-of-state.[38]

89. In 2005, amendments to the statute were made to dispense with the confidentiality protections contained in the 1991, 1995 and 1997 versions of the act and allowed for registry information to become available to the public on the Internet.[39]

90. New in-person reporting requirements were imposed, with registrants being required to report quarterly or yearly, depending on their numeric risk level.[40]

91. In addition, the 2005 amendments expanded the list of offenses for which registration was required as well as the categories of individuals required to register for life; categorized registrants based on levels of present dangerousness; lengthened the penalties for registration-related offenses; required registrants to maintain a driver's license or an identification card that had to be renewed annually; made registration information on certain juveniles public; and required fingerprinting as well as digitized photographs of the registrants.[41] The amendments also mandated registration for out-of-state students, people working in the state, and anyone convicted of a listed offense who are already required to register in another state or county.[42] Further, the amendments require registrants to report all locations they visited on at least three occasions in a month for 48 hours or more.[43]

92. The 2005 amendments also required registrants to provide a DNA sample upon request and imposed an in-person reporting requirement when a registrant enrolled, dis-enrolled, worked, or volunteered at institutions of higher learning.[44]

93. The 2005 amendments also required law enforcement to notify the public and school administrators, in person and/or through printed notification, when a registrant categorized as a Tier III danger moves into the area.[45]

94. Further, Texas' Sex Offender Registration Plan was extensively amended by Acts of 2009,[46] 2013,[47] and 2015[48] to comply with the Federal Sex Offender Registration and Notification Act (SORNA), which is Title I of the Adam Walsh Child Protection and Safety Act of 2006.[49]

---

[37] *See* Act of May 19, 1995, 74th Leg., R.S., ch 258, § 1, 1995 Tex. Gen. Laws 2197.

[38] *See* Act of June 1, 1997, 75th Leg., R.S., ch 668, § 1, 1997 Tex. Gen. Laws 2253, 2269.

[39] *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3387.

[40] *See* Tex. Code Crim. Proc. art. 62.058 *amended by* Acts 2005, 79th Leg., ch. 1008, § 1.01, 2005 Tex. Gen. Laws.

[41] *See* Acts 2005, 79th Leg., ch. 1008, 2005 Tex. Gen. Laws.

[42] *See id.*

[43] *See id.*

[44] *See id.*

[45] *See supra* note 14.

95. Although states were required to comply with SORNA by July 27, 2011, or lose federal law enforcement funds, to date, only 15 states have substantially complied. The vast majority of states have elected not to comply because they are concerned about the cost and effectiveness of the federal SORNA requirements.[50]

96. As outlined in more detail below, since the U.S. Supreme Court decision in *Smith v. Doe*[51] approving Alaska's offender registry, TSORP has fundamentally changed by categorizing registrants into tiers; requiring in-person reporting of vast amounts of personal information; retroactively lengthening the registration for most registrants; and prohibiting registrants from engaging in broad areas of employment.

97. In sum, TSORP, which began as a private law enforcement database in 1991, has changed radically in the last 20 years. TSORP subjects registrants to obligations, restraints, disabilities, and punishment of a different character and different order of magnitude than the original sex offender registry.

## FACTUAL ALLEGATIONS: TIER CLASSIFICATION AND RETROACTIVE APPLICATION OF TSORP 2017

98. TSORP 2017 classifies registrants into tiers.[52] A registrant's tier-classification is based on his present level of dangerousness and, to an extent, determines the length of time that a person must register as well as the frequency of reporting.[53]

99. Tier I registrants are classified as low risk offenders.[54] Some Tier I offenders are only required to register and comply with all obligations imposed by TSORP 2017 for 10 years.[55] Tier II registrants are classified as moderate risks[56] and must register as well as comply for life.[57] Tier III registrants are classified as high risk offenders[58] and must register as well as verify registration in person every 90 days[59] for life.[60]

---

[46] *See* Acts 2009, 81st Leg., R.S., 2009 Tex. Gen. Laws.
[47] *See* Acts 2013, 83rd Leg., R.S., 2013 Tex. Gen. Laws.
[48] *See* Acts 2015, 84th Leg., R.S., 2015 Tex. Gen. Laws.
[49] *See* Adam Walsh Child Prot. & Safety Act of 2006, Pub. L. No. 109-248, 42 U.S.C. § 16901 et seq. (2006).
[50] *See id.*
[51] *See Smith v. Doe*, 538 U.S. 84, 100 (2003).
[52] *See* Tex. Code Crim. Proc. art. 62.007(c) (LexisNexis 2017).
[53] *See* Tex. Code Crim. Proc. art. 62.101 (LexisNexis 2017).
[54] *See* Tex. Code Crim. Proc. art. 62.007(c)(1) (LexisNexis 2017).
[55] *See* Tex. Code Crim. Proc. art. 62.101(b) (LexisNexis 2017).
[56] *See* Tex. Code Crim. Proc. art. 62.007(c)(2) (LexisNexis 2017).
[57] *See* Tex. Code Crim. Proc. art. 62.101(a) (LexisNexis 2017).
[58] *See* Tex. Code Crim. Proc. art. 62.007(c)(3) (LexisNexis 2017).
[59] *See* Tex. Code Crim. Proc. art. 62.058 (LexisNexis 2017).
[60] *See* Tex. Code Crim. Proc. art. 62.101(a) (LexisNexis 2017).

100. Tier classifications are based solely on the offense(s) of conviction.

101. Tier classifications are not based on, and do not correspond to, a registrant's actual risk of re-offending or the danger any registrant poses to the public. There is also no individualized determination about their risk classification or whether the span of their registration is warranted.

102. Although Plaintiffs John Does #1 and #5-7 are each classified as low risk to reoffend, the state of Texas requires each of them to register until they die.

103. Further, under TSORP 2017, even upon the clearest proof that the Plaintiffs are not dangerous, there is no mechanism in the statute that would allow the Plaintiffs to have their registration obligations eliminated or reduced.

104. In addition, TSORP 2017 is not limited to convicted individuals but requires registration and reporting by individuals like John Does #3 and #5 who were never convicted of a crime.

### FACTUAL ALLEGATIONS: IMPACT OF TSORP 2017 ON THE PLAINTIFFS

105. TSORP 2017 imposes extensive obligations, disabilities, and restraints upon its registrants.

106. TSORP 2017 subjects the Plaintiffs to continuous reporting, surveillance, and supervision. It also severely limits the Plaintiffs abilities to find housing and employment, get an education, travel, engage in free-speech activities, be free from harassment and stigma, and to understand what is required of each of them under the statute.

107. Finally, registration under TSORP 2017 triggers a vast array of additional obligations, disabilities, and restraints under other federal, state, and local laws and ordinances. It also triggers private policies and rules barring or limiting registrants from numerous activities such as: the directing of the upbringing of their children and access to property, goods and services available to the public.

### A. Reporting, Surveillance, and Supervision

108. As Tier III registrants, Plaintiffs John Does #4 and #6 must report in person every three months within a specified seven-day period[61] and verify all of the following required information:

> o all names and nicknames, social security number, and date of birth;
> o residential address, including any address where the individual expects to spend more than six days, as well as the dates of any such temporary stay;
> o employer names and addresses, including information on any person who agrees to hire a registrant for a temporary job;
> o all schools they are attending;
> o telephone numbers registered to the individual or routinely used;
> o email and instant message addresses, usernames or other identifiers assigned to the individual or routinely used;

---

[61] *See* Tex. Code Crim. Proc. art. 62.058(a) (LexisNexis 2017).

    o  all other designations used in Internet communications or postings;
    o  license plate and registration information for any vehicle owned by the individual;
    o  driver's license or personal identification card ;
    o  passport and immigration documents;
    o  occupational license information; and
    o  a complete physical description, including shoe size.

Texas Code of Criminal Procedure Article 62.051(c).[62]

109. TSORP 2017 also requires the Plaintiffs to provide a current photograph,[63] fingerprints,[64] and palm prints.[65] If a Plaintiff's appearance changes, he must also update the photograph.[66]

110. In addition to reporting in person at regular intervals, the Plaintiffs must report in person within seven days whenever certain information changes.[67] The immediate in-person reporting requirement is triggered whenever the Plaintiffs:

- change their residence;[68]
- begin, change, or discontinue employment;[69]
- enroll or dis-enroll as a student;[70]
- change their name; and
- establish or change an email address, instant message address, or other Internet username;[71]

111. There are no good cause exceptions to the reporting requirements or to the "immediate" notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, the Plaintiffs must report in person within seven days or face criminal charges.[72]

112. TSORP 2017's reporting, surveillance, and supervision requirements are similar to the reporting, surveillance, and supervision that the Plaintiffs experienced while serving their sentences or on probation, parole or community supervision.

113. Under TSORP 2017, the Plaintiffs must report the same, if not more, information than what they were required to report while they were serving their sentences on probation, parole or community supervision.

---

[62] *See* Tex. Code Crim. Proc. art. 62.051(c) *amended by* Acts 2017, 85th Leg., H.B. 29, 2017 Tex. Gen. Laws, http://www.statutes.legis.state.tx.us/Docs/CR/htm/CR.62.htm.

[63] *See* Tex. Code Crim. Proc. art. 62.051(c)(2) (LexisNexis 2017).

[64] *See id.*

[65] *See* 34 U.S.C.S. § 20914(b)(5) (LexisNexis 2017).

[66] *See supra* note 60.

[67] *See* Tex. Code Crim. Proc. art. 62.051 (LexisNexis 2017).

[68] *See* Tex. Code Crim. Proc. art. 62.055 (LexisNexis 2017).

[69] *See* Tex. Code Crim. Proc. art. 62.051(c)(6), 62.051(i), 62.152(d) (LexisNexis 2017).

[70] *See id.*

[71] *See* Tex. Code Crim. Proc. art. 62.0551 (LexisNexis 2017).

[72] *See supra* note 59.

114. TSORP 2017's requirement that minor changes be reported in person within three business days is a level of reporting that far exceeds what the Plaintiffs experienced while they were serving their sentences on probation, parole or community supervision.

115. As a result of TSORP 2017's immediate reporting requirements, having to report either annually, quarterly or monthly along with the reporting requirements for travel and temporary visitation, the plaintiffs must report for life in person to law enforcement with a frequency that is similar to their reporting obligations when they were on probation, parole or community supervision.

116. For the Plaintiffs, the lifetime surveillance imposed by these reporting requirements is not only intrusive, but burdensome. The time required to register or update information varies depending on where and when the Plaintiffs report. Each registration can take up to an hour-and-a-half, not including travel time.

**B. Housing**

117. Registering on TSORP 2017 also severely limits the Plaintiffs' access to housing.

118. Because sex offender registry information is public and accessible over the Internet, many landlords refuse to rent to registrants since these properties can then be easily identified on the registry.

119. When Mr. Doe #7 moved to Texas, he was required to register as a sex offender for the first time on the National Sex Offender Registry. Neither his state of conviction, Oregon, nor his state of residence prior to his move, Nevada, required him to register. Upon his move to Texas with his family, they rented an apartment in Austin, Texas, and even though he disclosed to the management company the fact of his prior conviction, he and his family were evicted upon his registration as a sex offender.

120. Mr. Doe #1 was convicted of his offense in 1971. He has not been arrested or convicted of a crime in the last 10 years and the neighborhood in which he lives has deteriorated making it a dangerous place to live. Although Mr. Doe #1 has looked for other housing, he cannot find another apartment because he is on the registry.

121. Mr. Doe #4's status as a registrant has likewise prevented him from finding housing. When looking for apartments, Mr. Doe #4 has been rejected numerous times because he is a registrant.

122. Mr. Doe #4 has been unable to secure housing under his own name and instead is leasing a house under his wife's name.

123. Mr. Doe #6 has had severe problems in finding housing due to his name being on the registry.

124. Whenever Mr. Doe #6 has tried to rent an apartment, each time, a landlord would tell him that they will not rent to anyone who is on the sex offender registry.

125. For a time, Mr. Doe #6 rented a room at a private home. However, after several years, the owner suddenly told him to leave. Thereafter, he could not find another apartment and became homeless. Having no other choice, Mr. Doe #6 began living in his car at a storage facility.

126. Mr. Doe #6 is now homeless.

**C. Employment**

127. TSORP 2017 bars the Plaintiffs from working, or offering to work, in common employments such as bus, taxi or limousine drivers; working at amusement parks; or even working in residential properties of any type.[73]

128. Mr. Doe #1 has repeatedly lost employment opportunities because of his status as a registered sex offender. When he was first released from prison, he entered the field of barber and beauty shop management and flourished.

129. However, after owning a barbershop for over two decades, Mr. Doe #1 lost his highly successful shop through a divorce. By this time the registry was posted on the Internet and despite his best efforts, Mr. Doe #1 has been unable to open up another shop ever since. The owners of commercial real estate, or their agents, have repeatedly refused to lease him commercial space because he is on the registry.

130. Mr. Doe #2 has also been harmed in his ability to earn a living. For years, Mr. Doe #2 was employed in the health and wellness industry managing and consulting in the operation of health clubs. Mr. Doe #2 has worked in this area as an employee, owner, and consultant all of his adult life. However, once Mr. Doe #2 was required to register as a sex offender, he became unemployed because the public can now easily access information about his 29-year old conviction and the health and wellness industry is quite sensitive to such information.

131. Individuals in the health club industry who are familiar with Mr. Doe #2 have indicated their willingness to employ him, but dare not because of the registry.

132. Mr. Doe #4 lives in a small Texas town. Upon his release from prison, he worked for a family business until its collapse. Thereafter, Mr. Doe #4's status as a registered sex offender has prevented him from finding or holding a job. Mr. Doe #4 has been unemployed since 2010.

133. Further, Mr. Doe #4, who is trained in various areas of construction work, cannot even accept odd jobs to support his family by performing home repairs, remodeling, or even housecleaning because of TSORP 2017's bar to common employment.[74]

134. Mr. Doe #4 has had great difficulty finding work because so few employers will hire registrants.

135. Mr. Doe #4 is presently unemployed and has no source of income.

---

[73] *See* Tex. Code Crim. Proc. art. 62.063 (LexisNexis 2017).

[74] *See supra* note 40.

136. Mr. Doe #7's status as a registrant has also impaired his ability to find work. Mr. Doe #7 recently moved to Texas from Nevada and was required to conform, for the first time, to the public notification provision under TSORP 2017.[75] While residing in both Nevada and Oregon, he was not required to register as a sex offender and had been classified as low-risk, allowing him to be employed full-time and maintain an excellent work record. However, after being required to register in Texas, Mr. Doe #7 has been unable to obtain employment because of his status as a registrant and is now looking to open up his own small business instead.

137. Nonetheless, despite having excellent credit, Mr. Doe #7 is hampered in attempting to open up a business because he is unable to obtain a bank loan. In response to his applications, the banks inform him that they do not believe his business will succeed because he is a registered sex offender.

**D. Travel**

138. The Plaintiffs' status as a registrant has severely restricted their ability to travel.

139. The Plaintiffs must provide advance notice if they travel outside the U.S. for more than seven days.[76]

140. In addition, if the Plaintiffs travel, they must also comply with any applicable sex offender registration laws in other jurisdictions. Because sex offender laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (*e.g.* registering one's presence in another state) or prohibitions on ordinary behavior (*e.g.* visiting a library or park) in other jurisdictions.

141. Mr. Doe #1 does not visit friends and family for more than six days at a time because, otherwise, he would be required to notify law enforcement in person about his travel plans.

142. Mr. Doe #2 has lived on the East Coast, in Florida, and in the Midwest, and has friends all over the country and all over the world. In order for him to personally see his friends, he needs to be able to freely travel.

143. Although Mr. Doe #2 would like to take extended trips to visit his friends and family, he does not do so and instead limits his trips to less than seven days.

144. Mr. Doe #2 would like to travel internationally to see Europe. In or around 2010, Mr. Doe #2 and his wife planned to vacation in Europe. However, he and his wife were unable to take this trip because he was informed by his compliance officer that the countries he intended to visit in Europe had not established a method of complying with his registry requirements. Therefore

---

[75] *See supra* note 23.

[76] *See* International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders, Pub. L. No. 114-119 (Sept. 5, 2017), *available at* https://www.congress.gov/114/bills/hr515/BILLS-114hr515enr.pdf.

should Mr. Doe #2 go to Europe; he would be in violation of the statute.[77] Further, Mr. Doe #2 is also concerned that he cannot comply with the restrictions on international travel relating to where he will be staying at each stage of his trip.[78] This is information that he cannot know in advance, given the nature of such travel.

145. Mr. Doe #4's status as a registrant has also impaired his ability to travel. Mr. Doe #4's in-laws live in a small mid-western town. He has traveled with his wife to visit them on two occasions in the past. However, the requirements of the registry require him to inform law enforcement of his anticipated travel seven days before he travels. He then must also register in the town where his in-laws reside upon his arrival. Additionally, before returning, Mr. Doe #4 must inform the compliance officer of the town where he was visiting that he is leaving. Then upon his return home, he must again inform law enforcement. Because of these required, constant, in person check-ins, which take approximately an hour and a half to complete, Mr. Doe #4 is reluctant to travel anymore and has not visited his in-laws in a number of years.

146. Mr. Doe #5's status has limited his travel as well. Mr. Doe #5 works in the construction industry and as such is required to travel both within the state of Texas and nationally. On each occasion that Mr. Doe #5 works on a site in Texas, outside of his hometown for more than six days, he must personally disclose the address of his worksite to his local compliance officers. He must also personally disclose this address to compliance officers in the town where the worksite is located. This process is repeated each time Mr. Doe #5 works on an out-of-state site as well; no matter how many days he will be there. Consequently, the registration process has become even more burdensome and has led to the rejection of out-of-state work by Mr. Doe #5. This is ultimately harming his ability to provide for his family.

## E. Speech & Internet

147. TSORP 2017 severely restricts the Plaintiffs' ability to speak freely on the Internet. The Plaintiffs not only must provide law enforcement with all electronic mail addresses, instant message addresses, log-in names, or other identifiers that are assigned and routinely used by them,[79] but must also personally report within three days whenever they establish any electronic mail address, instant message address, or other designation used in Internet communications or postings.[80]

148. The Plaintiffs are concerned about using the Internet because TSORP 2017 is unclear about whether they must report immediately and in person for mundane tasks such as setting up an online account to pay their taxes, registering with Netflix, purchasing or reviewing products on Amazon, or using an online bulletin board.

---

[77] *See id.*

[78] *See* International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders, Pub. L. No. 114-119 § 6 (Sept. 5, 2017), *available at* https://www.congress.gov/114/bills/hr515/BILLS-114hr515enr.pdf.

[79] *See* Tex. Code Crim. Proc. art. 62.058 (LexisNexis 2017).

[80] *See* Tex. Code Crim. Proc. art. 62.0551 (LexisNexis 2017).

149. Mr. Doe #4 does not use the Internet because he would be required under TSORP 2017 to register all emails and Internet identifiers. He would also need to report constantly in order to use different websites with different usernames.

150. Mr. Doe #4 would like to communicate with his family and friends on Facebook, but does not do so because he would have to register information about his account.

151. Mr. Doe #7's status as a registrant similarly restricts his freedom to use the Internet. In the past, Mr. Doe #7 has previously established a Facebook account, but now has deleted it because he does not want to be constantly concerned with registering his usernames etc. at the risk of imprisonment. Mr. Doe #7 was using his Facebook account to communicate with friends and family. He is now unable to do so.

152. In addition, Mr. Doe #7 is afraid that because he must provide all email and Internet identifiers pursuant to TSORP 2017, his Internet use will be monitored.

**F. False Information and Public Stigmatization**

153. Because the sex offender registry is publicly available, several companies also distribute their own "version" of the sex offender registry, which bandies about various labels such as "predator" and "sexual predator" to individuals on the registry. Mr. Doe #2 was convicted of a sex offense over 29 years ago and has not been convicted of a crime since, but still is subject to being labeled as a "sexual predator."

154. The Texas Department of Public Safety tolerates the various websites that publicly and falsely label Mr. Doe #2 as a "sexual predator," which he is not.

155. Further, TSORP 2017 publicly and falsely labels Mr. Doe #3 and Mr. Doe #5 as "convicted sex offenders," which they were not, as both of their cases were dismissed and neither was convicted of a crime.

156. TSORP 2017 does not simply provide a registry of sex offenders, as past versions of TSORP have done. TSORP 2017 publicly labels and categorizes registrants by tiers, corresponding to "levels of present dangerousness," which stigmatizes them and falsely identifies them as dangerous sex offenders on the registry. Although there may be some registered sex offenders who will reoffend, majority of them will not reoffend. Thus TSORP 2017 wrongly labels them as a risk to the public.

157. Because Plaintiffs are stigmatized as sex offenders over the Internet, Plaintiffs and their families are subjected to harassment, social ostracism, and even threats of violence.

158. For example, Mr. Doe #4 has been frequently subjected to anonymous threats of violence and his house has been targeted by acts of vandalism. Mr. Doe #4 has also been called a "child molester" and "pervert" on the street.

**G. Vagueness, Strict Liability, and Impossibility of Compliance**

159. The Plaintiffs have been further harmed because the restrictions and obligations of TSORP 2017 are either so vague that the Plaintiffs are unable to know whether or not they are in

violation of the law, or are so extensive and pervasive that the plaintiffs are literally unable to comply with the law. Moreover, different law enforcement agencies in different places across the state apply the requirements of TSORP 2017 differently.

160. TSORP 2017's requirements for reporting personal information are so vague that the Plaintiffs do not understand what information must be reported, or what changes in information subject them to the in person immediate reporting requirements.

161. For example, TSORP 2017 requires Plaintiffs to register any address they temporarily visit on three or more occasions for 48 hours or more within a 30-day period.[81]

162. Mr. Doe #5 frequently works out of town on construction sites. On many occasions, he will be asked to perform a simple inspection of an installation that should not take longer than 48 hours. If he is asked to revisit the site to monitor an ongoing installation, or if the task he is monitoring runs into a complication, he must decide whether he is required to return home and register or run the risk that he is out of compliance with the statute.

163. Similarly, Mr. Doe #5 is directed to perform the installation of equipment on the premises of a multifamily residential complex. To date, he is unaware whether he could stay on the premises if the other workers assigned to this job are required to temporarily leave without him.

164. Further, the Plaintiffs who use the Internet are also unable to determine what information they must report under the statute.

165. In discussing this case with counsel, the Plaintiffs learned of many obligations and restrictions of which they were previously unaware of. All the Plaintiffs are concerned that they will inadvertently violate TSORP 2017's requirements because they do not understand what they are.

166. Finally, TSORP 2017 imposes criminal liability despite the impossibility of compliance. TSORP 2017 imposes liability regardless of whether illness, injury, or practical difficulties make compliance impossible.

167. For example, Mr. Doe #6 suffers from a severe bipolar disorder. Through no fault of his own, he became homeless during a psychotic episode and was therefore unable to comply with his reporting requirements. Currently, Mr. Doe #6 is serving 2 years imprisonment after taking a plea for his failure to report.

168. Mr. Doe #6, and the other Plaintiffs, fear that despite their best efforts to understand and comply with the law as well as despite the absence of any intention to violate the law, they will be held strictly liable for any failure to comply.

169. TSORP 2017 imposes penalties of up to 20 years imprisonment for violations of the statute.[82]

---

[81] *See* Tex. Code Crim. Proc. art. 62.059 (LexisNexis 2017).

[82] *See supra* note 3.

**H. Consequences Beyond TSORP 2017**

170. Because the Plaintiffs are required to register as sex offenders under TSORP 2017, they are also subject to a vast and labyrinth array of laws and ordinances imposed on registered sex offenders by the federal government as well as other state and local municipalities.

171. Because registration in one state generally triggers registration in another state, the fact that the Plaintiffs are subject to TSORP 2017 means they are also subject to the sex offender registration laws of other jurisdictions if they travel or move.

172. In addition, because the Plaintiffs are required to register as sex offenders under TSORP 2017, they are subject to policies by private entities that refuse to provide goods or services to registered sex offenders. But for the fact that the plaintiffs are labeled by the state as registered sex offenders, the goods and services provided by those private entities would generally be available to them.

## CLASS ACTION ALLEGATIONS

173. The named Plaintiffs seek certification of this complaint as a class action. Pursuant to Fed. R. Civ. P. 23(a), the class is quite numerous that joinder of all members is impracticable, there are questions of law or facts in common to the class, the claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class. This class consists of around 85,000. The named Plaintiffs seek to represent seven classes consisting of the following:

- **Class One**: All individuals with an Ex Post Facto claim with two subclasses of those whose conviction was disposed of prior to the enactment of the sex offender registry and those who receive extra restrictions each time a new provision is enacted into the registry.
- **Class Two**: All individuals with a Due Process claim who never received notice of the extra restrictions imposed by the provisions that were added to the registry.
- **Class Three**: All individuals with a Contract Clause claim who have been given deferred adjudication. Those with deferred adjudication should not be treated the same as those with a conviction for the purpose of TSORP 2017.
- **Class Four**: All individuals with an Equal Protection claim who have been given deferred adjudication. Those with deferred adjudication and treated the same as those with convictions retroactive to 1970 is arbitrary and capricious, and should not be treated the same as those with a conviction for the purpose of TSORP 2017.
- **Class Five**: All individuals with a Cruel and Unusual Punishment claim with subclasses of those whose conviction was disposed of prior to the enactment of the sex offender registry, those who received extra restrictions each time a new provision was enacted into the registry, and those forced to sign up for the registry as a condition of Parole or as a later added condition of Community Supervision.
- **Class Six**: All individuals with a Liberty Interest claim who have travel conditions and restrictions imposed on them.

- **Class Seven**: All individuals with a First Amendment claim who have to report on-line identifiers.

175.     The Plaintiff Classes seek a declaration that the above statutory schemes are unconstitutional because they not only violate class members' constitutional rights but also ex post facto, and certain provisions should be void for vagueness.

176. The proposed classes are numerous with approximately 85,000 people on the Texas Sex Offender Registry.

177. Joinder of all class members is impracticable because not only are the classes numerous but the numbers in each class keep changing.

178. There are questions of law and fact that are common to all class members including but not limited to:

- Does the Texas Sex Offender Registry violate fundamental rights thereby violating class members' constitutional rights;
- Does retroactively applying subsequent amendments to Chapter 62 to class members violate Ex Post Facto;

179. All individuals who fall under the class definitions are subjected to the same statutory scheme. A single declaratory judgment will provide relief to each class member since the above questions are common to all class members.

180. Defendants have acted and continue to act in such a way that is adverse to the rights of the proposed classes which makes awarding final declaratory relief to the class as a whole appropriate.

181. Plaintiffs and the classes they seek to represent have been directly injured by the statutory schemes challenged in this complaint and are at risk for future harm from the continuation of these schemes.

182. Plaintiffs will adequately and fairly represent the interests of the class; and the claims of the Plaintiffs are typical of the claims of all members of the proposed class.

183. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

## CLAIMS FOR RELIEF

### Count I: Violation of The Due Process Clause (Stigma Plus)

184. Plaintiffs allege and incorporate paragraphs 1 through 172, above, as if fully set forth herein.

185. TSORP 2017 does not simply provide a registry of sex offenders, as past versions have.

186. TSORP 2017 categorizes sex offenders into three tiers of present dangerousness. Each of the Plaintiffs are categorized into a tier of present dangerousness which stigmatizes as well as publicly and falsely identifies the Plaintiffs among the public as dangerous sex offenders without any real empirical support.

187. TSORP 2017 categorizes Plaintiffs into three tier classifications of present dangerousness and publicizes the information over the Internet.

188. The extent, duration, and frequency of TSORP's reporting and notice requirements are based upon a registrant's tier classification of present dangerousness.

189. Plaintiffs' tier classification of their level of present dangerousness to the community is not based upon any meaningful social or psychological assessment.

190. Plaintiffs have no means to challenge or contest the tier classification of dangerousness to which they have been assigned.

191. Plaintiffs' tier classification of their dangerousness to the community has an unquestionable impact upon their reputation as well as plaintiff's ability to gain employment and housing.

192. TSORP 2017 does not provide or grant Plaintiffs any individualized consideration or hearing before each is classified to a tier of dangerousness.

193. TSORP 2017 violates each Plaintiff's fundamental right to due process because it does not afford them a hearing or individualized consideration before publicly classifying them as to their present-level of dangerousness.

**Count II: Violation of The Due Process Clause (Right to Travel)**

194. The right to travel is a fundamental right that is protected under the Due Process Clause of the 14th Amendment to the U.S. Constitution.[83]

194. TSORP 2017 substantially interferes with the Plaintiffs' ability to travel.

196. TSORP 2017 does not provide for any individualized consideration before restricting the Plaintiffs' right to travel.

197. TSORP 2017 violates the Plaintiffs' fundamental right to travel because it is not narrowly tailored to serve a compelling state interest.

**Count III: Violation of The Due Process Clause (Work)**

198. The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the 14th Amendment of the U.S. Constitution.[84]

199. TSORP 2017 substantially interferes with the Plaintiffs' ability to engage in the common occupations of life by prohibiting Plaintiffs from engaging in those occupations listed in Texas

---

[83] *See* U.S. Const. amend. XIV, § 1, cl. 2.
[84] *See id.*

Code of Criminal Procedure Article 62.063 which include positions in amusement parks, bus drivers, taxi and limousine drivers, and any unsupervised work to be performed on residential property.[85]

200. As such, TSORP 2017 creates a wholesale barrier to employment. That barrier is not based on the Plaintiffs' fitness or capacity to work in the jobs from which they have been excluded.

201. Further, TSORP 2017 does not provide for any individualized consideration before restricting the Plaintiffs' ability to engage in the common occupations of life.

202. TSORP 2017 violates the Plaintiffs' fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

## Count IV: Violation of The First Amendment

203. The First Amendment of the U.S. Constitution prohibits abridgment of the freedom of speech.[86] The 14th Amendment incorporates the First Amendment against the states.[87]

204. TSORP 2017 requires the Plaintiffs to report information about their on-line accounts and activity to law enforcement, which substantially interferes with access to the Internet as a form for speech and eliminates the Plaintiffs' opportunities for anonymous online speech.

205. TSORP 2017's requirements to report information about online accounts and activity is invalid under the First Amendment both on its face and as applied because it is not narrowly tailored to serve a compelling state interest and because it prohibits a substantial amount of protected speech.

## Count V: Violation of The Due Process Clause

## (Vagueness, Impossibility and Strict Liability)

206. The Due Process Clause of the 14th Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess at their meaning and will not differ as to their application.

207. TSORP 2017 contains provisions that are invalid under the vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute. This makes it impossible for the Plaintiffs to conform their conduct to the statutory requirements making it likely that the statute will be enforced in different ways in different places or against different people.

208. The Due Process Clause of the 14th Amendment prohibits states from enforcing laws with which it is impossible to comply. TSORP 2017 contains provisions with which compliance is impossible.

---

[85] *See* Tex. Code Crim. Proc. art. 62.063 (LexisNexis 2017).
[86] *See* U.S. Const. amend. I.
[87] *See* U.S. Const. amend. XIV, § 1, cl. 3.

209. The Due Process Clause also limits the use of strict liability in the criminal law. TSORP 2017, by the manner in which it has been interpreted by the Texas Court of Criminal Appeals, contains provisions that impose strict liability in violation of due process.

210. The parts of TSORP 2017 that are void for vagueness, that are impossible to comply with, or that wrongly impose strict liability include but are not limited to:

- the requirement to report changes in personal data within seven days;[88]
- The requirement to maintain a driver's license or state personal identification card with the current address;[89] and
- The requirement to report the temporary address of any location in which an individual visits three times a month for more than 48 hours.[90]

**Count VI: Violation of The Equal Protection Clause**

211. John Doe #3 resides in and is a citizen of the state of Minnesota. He has not resided in the state of Texas for over 10 years.

212. John Doe #3 does not fall under the jurisdiction of TSORP 2017 and is not required to register in the state of Texas as a sex offender.

213. John Doe #3 successfully completed the requirements placed upon him as a sex offender by the state of Minnesota and no longer required to register in Minnesota.

214. Notwithstanding, the state of Texas continues to require John Doe #3 to register under TSORP and publicizes his personal information as well as information about his nearly 25-year old charge, which he was never convicted of, over the Internet despite having no jurisdiction over him.

215. Even though the state of Texas does not have jurisdiction over John Doe #3, its actions of maintaining him on Texas' sex offender registry are arbitrary and capricious.

216. The state of Texas is treating John Doe #3 similarly to other sex offenders on its sex offender registry by allowing his information to be publicly disseminated over the Internet.

**Count VII: Violation of The Ex Post Facto Clause**

217. The retroactive application of TSORP 2017 violates the Ex Post Facto Clause of the U.S. Constitution[91] because it makes more burdensome the punishment imposed for offenses committed before the enactment of TSORP as well as applies it retroactively.

**Count VIII: Violation of the Eighth Amendment**

---

[88] *See* Tex. Code Crim. Proc. art. 62.055-62.0551 (LexisNexis 2017).
[89] *See* Tex. Code Crim. Proc. art. 62.060 (LexisNexis 2017).
[90] *See* Tex. Code Crim. Proc. art. 62.059 (LexisNexis 2017).
[91] *See* U.S. Const. art. I, § 10, cl. 1.

218. The punishment imposed by TSORP 2017 is quite excessive and arbitrary because of the acts committed by the public against the plaintiffs and other TSORP 2017 registrants.

## Count IX: Violation of Double Jeopardy

219. TSORP 2017 also violates Double Jeopardy by imposing additional punishment on a registrant even after they have completed their sentencing requirements.

## Count X: Violation of the U.S. Constitution Contracts Clause

220. TSORP 2017 is also a violation of the contracts clause[92] in the federal constitution because it adds punishment conditions that are in violation of some of the terms of the plea agreements made by some registrants.

## Lack of Legal Remedy

221. The Plaintiffs' harm is ongoing and cannot be alleviated except by injunctive relief.

222. No other remedy is available at law.

## Prayer for Relief

Wherefore, the Plaintiffs request that this Court:

a. Issue a judgment, pursuant to 28 U.S.C. §§2201-2202,[93] declaring that TSORP 2017 unconstitutionally interferes with the Plaintiffs' fundamental rights to travel, engage in the common occupations of life and to engage in free speech, and issue a preliminary and permanent injunction restraining the Defendants from enforcing against the Plaintiffs those provisions of TSORP 2017 that interfere with these rights;

b. Issue a judgment, pursuant to 28 U.S.C. §§2201-2202[94] (1) declaring that retroactive application of TSORP 2017 violates the prohibition in the U.S. Constitution against ex post facto laws and cruel and unusual punishment laws, and issue a preliminary and permanent injunction restraining the Defendants from retroactively enforcing TSORP 2017 against the Plaintiffs without an individualized determination of dangerousness; and (2) declaring the treatment of persons having deferred adjudication the same as those with conviction under TSORP 2017 violates Equal Protection and the Contract clauses;

c. Issue a judgment pursuant to 28 U.S.C. §§2201-2202[95], declaring that TSORP 2017 is void under the Due Process Clause of the 14th Amendment to the U.S. Constitution due to vagueness, impossibility, and wrongful imposition of strict liability, and issue a preliminary and permanent injunction restraining the Defendants from enforcing against the Plaintiffs those provisions of TSORP 2017 that are unconstitutional;

---

[92] See U.S. Const. art. I, § 10, cl. 1.
[93] See 28 U.S.C. §§ 2201-2202 (LexisNexis 2017).
[94] See id.
[95] See id.

d. Issue a judgment certifying this petition as a class action pursuant to Fed. R. Civ. P. 23(b)(2);

e. Issue and appoint this undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23(g);

f. Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988;[96] and

g. For such further relief as the Court deems just and proper.


Respectfully submitted,


Estes-Hightower PLLC
2001 Bryan Street, Suite 2110
Dallas, Texas 75201
832-220-9454 - Office
832-916-2410 – Fax
teri.ehpllc@gmail.com
By: /s/Terence Estes-Hightower
Terence Estes-Hightower
State Bar No. 24028746
Attorney-in-Charge for Plaintiffs

---

[96] *See* 42 U.S.C. § 1988 (LexisNexis 2017).