UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN DOES #1-7, *individually and on behalf of all others similarly situated*,<br><br>　Plaintiffs,<br><br>v.<br><br>GREG ABBOTT, Governor of the State of Texas, and COLONEL STEVEN MCGRAW, Director of the Texas Department of Public Safety,<br><br>　Defendants. | CIVIL ACTION NO. 3:18-CV-0629-B |

## MEMORANDUM OPINION AND ORDER

Plaintiffs 152 John Does—all individuals either convicted of or charged with sexual offenses and covered by Texas's Sex Offender Registration Program—bring suit asking this Court to declare large parts of the statute unconstitutional. In sum, Plaintiffs argue that the statute, which began as a private law-enforcement database in 1991, has radically expanded in its obligations, restraints, and disabilities over the last three decades, to the point that it currently infringes on their constitutional rights. Defendants in turn seek dismissal of this suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) arguing that the Supreme Court's decision in *Smith v. Doe*, 538 U.S. 489 (2003), cases from this Circuit interpreting that opinion, and long-standing constitutional principles warrant a complete dismissal of Plaintiffs' claims. Having been fully briefed on this Motion, the Court agrees with Defendants, and for the reasons discussed below **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(1) and **DISMISSES with prejudice** all of Plaintiffs' claims against Governor Greg Abbott for a lack of standing, and **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(6)

and **DISMISSES with prejudice** all of Plaintiffs' claims on the merits.

# I.

# BACKGROUND[1]

This dispute involves the constitutionality of Chapter 62 of the Texas Code of Criminal Procedure, which establishes the Texas Sex Offender Registration Program (hereinafter "Chapter 62"). Specifically, the suit challenges the constitutionality of certain provisions in the most recent amendment to Chapter 62 made in 2017. The suit is brought by 152 individual Plaintiffs on behalf of themselves and as a putative class action on behalf of all others who are similarly situated. Although each Plaintiff has uniquely individualized factual allegations thoroughly outlined in their Amended Complaint, each Plaintiff was charged or convicted with an offense covered by the statute prior to the 2017 version of Chapter 62 going into effect and is currently subject to the statute's requirements.[2] Doc. 4, Am. Compl., ¶ 2.

Plaintiffs filed suit under 42 U.S.C. §§ 1983 and 1988 challenging the constitutionality of Chapter 62 on ten separate grounds. *See id.* ¶ 7. As addressed in more depth below, Plaintiffs argue that large portions of Chapter 62 are unconstitutional because: (Count I) the tier ranking system employed by the statute violates the Due Process Clause by stigmatizing Plaintiffs without affording them a hearing or individualized consideration, *id.* ¶¶ 273–81; (Count II) the statute violates the

---

[1] The Court draws its factual account from the Plaintiffs' Amended Complaint (Doc. 4) as well as the parties' briefing on the Motion at issue. Any contested facts are identified as the allegation of a particular party.

[2] It is undisputed that Plaintiffs all have reportable convictions or adjudications making them subject to the requirements of Chapter 62. Doc. 4, Am. Compl., ¶ 2. However, because how a particular Plaintiff received his reportable conviction or adjudication is immaterial to the Court's analysis, the Court uses the term "convicted sex offender" or "convicted," to refer to all Plaintiffs, even those who may have received deferred adjudication or plead guilty for their charges.

Due Process Clause by interfering with Plaintiffs' ability to travel, *id.* ¶¶ 282–85, and (Count III) engage in certain employment opportunities, *id.* ¶¶ 286–290; (Count IV) the statute's requirements for reporting online account information and activity violates the First Amendment by interfering with their rights to use the Internet as a forum for speech, *id.* ¶¶ 291–93; (Count V) certain statutory provisions are vague, impossible to fully comply with, and impose strict liability in violation of the Due Process Clause, *id.* ¶¶ 294–98; (Count VI) the statute violates the Equal Protection Clause as to John Doe #3, *id.* ¶¶ 299–304; (Count VII) the statute violates the *Ex Post Facto* Clause by retroactively punishing Plaintiffs for offenses committed before the 2017 version was enacted, *id.* ¶¶ 305–07; (Count VIII) the statute violates the Eighth Amendment's protection against cruel and unusual punishment, *id.* ¶ 308; (Count IX) the statute violates Double Jeopardy by imposing additional punishments for the same offense, *id.* ¶ 309; and (Count X) the statute violates the Contracts Clause by adding punishment conditions that violate many of Plaintiffs' plea agreements, *id.* ¶ 310.

In response to these allegations, Defendants filed this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 17, Defs.' Mot. to Dismiss, 1. Defendants moved to dismiss Plaintiffs' claims against Defendant Governor Greg Abbott under Rule 12(b)(1) on jurisdictional grounds, arguing that Plaintiffs lack standing, and in the alternative, that as Governor of the State of Texas, Abbott is entitled to Eleventh-Amendment immunity. Doc. 18, Defs.' Br. Dismiss, 2–5. The remainder of Defendants' Motion seeks to dismiss all of Plaintiffs' claims under Rule 12(b)(6) arguing that the claims are either barred by Supreme Court precedent or "fail to overcome the State's regulatory interest in notifying the public of individuals with reportable convictions or adjudications for sex offenses." *Id.* at 1. Plaintiffs filed their Response (Docs. 27 & 29)

to Defendants' Motion, and Defendants filed their Reply (Doc. 36). Defendants' Motion is therefore ripe for the Court's review.

## II.

## LEGAL STANDARDS

A.     *Federal Rule of Civil Procedure 12(b)(1)*

"'Federal courts are courts of limited jurisdiction.'" *MacKenzie v. Castro*, No. 3:15-cv-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012). And Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which a party may challenge that jurisdiction. *Id.* "Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Little v. Tex. Attorney Gen.*, 2015 WL 5613321, at *2 n.5 (N.D. Tex. Sept. 24, 2015) (citing *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013)).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie*, 2016 WL 3906084, at *2. A facial challenge occurs "[w]hen a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "'is on the party asserting jurisdiction.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So Plaintiffs must prove jurisdiction exists. Here, Defendants filed their Rule 12(b)(1) motion without any additional evidence, so it is considered a facial attack. Thus, the Court considers just the sufficiency of "the

allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And "[i]f those jurisdictional allegations are sufficient, the complaint stands." *Id.*

B.   *Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

The Court now turns to Defendants' grounds for dismissal under Rules 12(b)(1) and 12(b)(6). Because the Fifth Circuit has instructed courts to first address jurisdictional arguments before any attack on the merits, the Court will begin with Defendants' arguments under Rule 12(b)(1). *See Ramming*, 281 F.3d at 161. However, to put the dispute in context, the Court first summarizes the historical background and relevant provisions of Chapter 62.

A.    *Texas's Sex Offender Registration Program*

The first sex offender registration laws in Texas took effect in 1991, and have been amended in every subsequent legislative session. Doc. 18, Defs.' Br. Dismiss, 8. The statute tasks the Texas Department of Public Safety with enforcement and implementation of Chapter 62. Tex. Code Crim. Proc. arts. 62.001(1), 62.005(a). Prior to 1997, Chapter 62's requirements applied only to those persons convicted of a sex offense after 1991. *See Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002). But, in 1997, the Texas Legislature made the registration requirement retroactively applicable to any person who had a reportable conviction or adjudication occurring on or after September 1, 1970, but only if the person was in the Texas criminal justice system for that offense on or after September 1, 1997. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 668 §§ 1, 11, 1997 Tex. Gen. Laws 2260–61, 2264. Since 2005, the registration requirement applies retroactively to every person whose "reportable conviction or adjudication" occurred on or after September 1, 1970. Tex. Code Crim. Proc. art. 62.002(a).

Chapter 62 requires that any person: (1) who has a "reportable conviction or adjudication," (including deferred adjudication); (2) "who is required to register as a condition of parole, release

to mandatory supervision, or community supervision;" or (3) who is an "extrajurisdictional registrant" must register as a sex offender in Texas. *Id.* 62.051(a), 62.052(a). Those persons must register promptly with the local law enforcement authority of the municipality (or county) where the registrant resides or intends to reside for more than seven days. *Id.* 62.004, 62.051(a)(1)–(2), 62.055(a). Registrant must provide, *inter alia*, their full name, date of birth, sex, race, physical description, social security number, driver's license number, home address, photograph, fingerprints, "online identifier[s]," employment status, and vehicle information. *Id.* 62.051(c). A persons' sex-offender status and housing location is made public; however, personal information including "online identifier[s]," telephone numbers, and employer information, is not disclosed. *Id.* 62.005(b).

All registrants must periodically report—either once every thirty days, ninety days, or year, depending on the type and number of offenses committed—in person to the registrant's primary registration authority to verify his or her registration information. *Id.* 62.058(a), 62.202. Generally, persons with reportable convictions must register for ten years following discharge from state supervision or a court's dismissal of the charges; however, some reportable convictions or adjudications, such as sexually violent offenses, require registration for life. *Id.* 62.101(a)–(c).

B.    *Dismissal Under Rule 12(b)(1)*

Defendants first challenge Plaintiffs' claims against Defendant Governor Abbott arguing that he is not a proper party, namely that Plaintiffs lack standing. Doc. 18, Defs.' Mot., 2.[3]

The judicial power of federal courts is limited by Article III of the Constitution. *Rivera v.*

---

[3] Alternatively, Defendants argue that Plaintiffs' claims against Governor Abbott are barred by Eleventh-Amendment Immunity because "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." Doc. 18, Defs.' Mot., 3. However, because the Court finds that Plaintiffs lack standing to sue Governor Abbott, the Court need not address that argument.

*Wyeth-Ayerst Labs.*, 283 F.3d 315, 318 (5th Cir. 2002). "'[T]he Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). Constitutional or Article III standing "'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan*, 504 U.S. at 560). To satisfy the prerequisites of Article III standing, plaintiffs must show that: (1) they suffered an injury in fact (one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); (2) there is a causal connection between the injury and the challenged conduct of the defendants; and (3) the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 559–60 (1992).

The parties' main dispute is whether Plaintiffs' claims against Governor Abbott meet the second element of Article III standing—traceability. Specifically, Defendants argue that "Plaintiffs do not have standing to sue [Governor Abbott] because . . . Plaintiffs do not identify any action—or a threat of action—taken by Governor Abbott related to the provisions at issue here." Doc. 18, Defs.' Br. Dismiss, 2–3. Plaintiffs respond that they have standing to sue Governor Abbott because "Plaintiffs' harm is traceable to Governor Abbott because the actions of each Defendant caused private parties to react in a manner that causes injury to Plaintiffs[;] . . . [e.g.,] treating Plaintiffs with social and professional ostracism and refusing Plaintiffs jobs as well as housing due to their sexual offender status." Doc. 29, Pls.' Resp., 7. The Court ultimately agrees with Defendants.

For traceability to exist, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."

*Lujan*, 504 U.S. at 560 (alterations incorporated). This requirement, however, "does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 456 (5th Cir. 2017) [appeal docketed, No. 17–1492 (U.S. May 1, 2018)] (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Further, as Plaintiffs argue, the traceability requirement can be satisfied by showing that the defendant's acts have caused others to react in a way that injures the plaintiff. Doc. 29, Pls.' Resp., 6–7 (citing 13A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5 (3d ed. West 2008)).

In their Amended Complaint, Plaintiffs sue Governor Abbott in his official capacity arguing that because the Texas Constitution provides that the governor shall ensure that laws are faithfully executed, Governor Abbott is ultimately the one responsible for the enforcement of Chapter 62. Doc. 4, Am. Compl., ¶¶ 90–91. Besides identifying this general duty placed on Governor Abbott as chief executive of Texas, Plaintiffs fail to identify any specific action or threats of action taken by Governor Abbott related to enforcing Chapter 62. Further, Chapter 62 contains no specific provisions that task Governor Abbott with any enforcement role. Instead, the statute places the enforcement and implementation roles on the Department of Public Safety, Tex. Code Crim. Proc. arts. 62.001(1), 62.005(a).[4]

Because Plaintiffs are unable to show how their alleged injuries are fairly traceable to Governor Abbott's specific conduct, this Court joins other courts in declining to find traceability

---

[4] The Department of Public Safety however is a proper party to this suit through its Director, Colonel Steven McCraw. *See, e.g.*, *Campaign for S. Equal. v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 697, 703–07 (S.D. Miss. 2016) (holding that a Mississippi Department of Human Services Executive was a proper party in a suit brought by same-sex couples challenging an adoption ban because the department maintained control over foster care and the private adoption process).

based solely on an officials general authority to enforce a state's laws. *See Inclusive Communities Project, Inc. v. Abbott*, 2018 WL 2415034, at *6–7 (N.D. Tex. May 28, 2018) (finding no standing to sue Governor Abbott because, *inter alia,* housing statute "provides no enforcement role for the governor"); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017). Based on the facts alleged in Plaintiffs' Amended Complaint, the Court finds that Plaintiffs lack standing to sue Governor Abbott, and thus, the Court **DISMISSES with prejudice** all of Plaintiffs' claims against Governor Abbott.

C.     *Dismissal Under Rule 12(b)(6)*

Next, Defendants seek to dismiss all ten of Plaintiffs' claims for relief under Rule 12(b)(6), arguing that the claims are either barred by Supreme Court precedent or "fail to overcome the State's regulatory interest in notifying the public of individuals with reportable convictions or adjudications for sex offenses." Doc. 18, Defs.' Br. Dismiss, 1.

As a threshold matter, under constitutional-law principles, constitutional challenges can be brought as facial or as-applied challenges. *See Croft v. Perry*, 604 F. Supp. 2d 932, 935 (N.D. Tex. 2009). As-applied challenges requires a court to determine whether a statute is administered unconstitutionally against a particular plaintiff, whereas a facial challenge looks at the constitutionality of a statute as written and without regard to an individual plaintiff. Besides Plaintiffs' "class of one" equal protection claim as to John Doe #3 (Count VI), Plaintiffs do not explicitly state whether their challenges to Chapter 62 are brought as facial or as applied claims. *See* Doc. 29, Pls.' Resp., 23. Further, Plaintiffs have not put forth evidence of the specific manner in which the statute is administered unconstitutionally against them to support an as-applied challenge for their remaining nine claims. Thus, the Court interprets those claims as facial challenges. *See Justice v. Hosemann*, 771 F.3d 285, 295 (5th Cir. 2014); *Croft*, 604 F. Supp. 2d at 935. This also

makes sense because Plaintiffs seek to invalidate certain provisions of Chapter 62 as unconstitutional as enforced generally and not just in their application to each individual Plaintiff. Doc. 4, Am. Compl., 54 (prayer for relief); *see Sonnier v. Crain*, 613 F.3d 436, 459 (5th Cir. 2010), *withdrawn in part*, 634 F.3d 778 (5th Cir. 2011) (Dennis, J., concurring in part and dissenting in part) ("The facial/as-applied distinction merely goes to the breadth of the remedy employed because a facial challenge is an argument for the facial invalidation of a law, whereas an as-applied challenge is an argument for the narrower remedy of as-applied invalidation.")).

Plaintiffs may prevail on a facial challenge, by "establish[ing] that no set of circumstances exist under which the law would be valid or that the statute lacks any plainly legitimate sweep." *Catholic Leadership Coalition of Tex. v. Resimnan*, 764 F.3d 409, 426 (5th Cir. 2014). With these principles in mind, the Court turns to the merits of each claim to determine whether Plaintiffs fail to state a claim upon which relief can be granted.

Because the analysis and outcome of Counts VII–IX is relevant to several other punishment-based claims, the Court will address those claims first. The Court will then take up the remaining claims in numerical order.

1.  Plaintiffs' *Ex Post Facto* Clause Claim (Count VII), Eighth Amendment Claim (Count VIII), and Double Jeopardy Claim (Count IX) all Fail Because Chapter 62 is Not Punitive in Effect.

The first three claims the Court addresses revolve around whether Chapter 62's scheme is punitive in nature. Plaintiffs argue that Chapter 62 violates the Constitution by: (1) applying a retroactive punishment to Plaintiffs for prior offenses in violation of the *Ex Post Facto* Clause; (2) imposing an excessive and arbitrary punishment on Plaintiffs in violation of the Eighth Amendment; and (3) imposing additional punishments on Plaintiffs for the same offense in violation of Double

Jeopardy. Doc. 4, Am. Compl., ¶¶ 305–09. An essential element to each of these claims is that the law be punitive. *Creekmore v. Attorney Gen. of Tex.*, 341 F. Supp. 2d 648, 659 (E.D. Tex. 2004). Thus, to determine whether these claims are valid the Court must determine the threshold issue of whether Chapter 62 is punitive.

To determine whether a law is punitive, courts apply an "intents-effects" test. *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001). This test requires courts to determine "(1) whether the legislature intended the sanction to be punitive; and (2) whether the sanction is so punitive in effect that the statute cannot be legitimately viewed as regulatory or civil in nature." *Creekmore*, 341 F. Supp. 2d at 660 (citing *United States v. Ursery*, 518 U.S. 267, 288 (1996)). If the legislative intent is not punitive, only the "clearest proof" that the statute's effect is punitive is sufficient. *Smith v. Doe*, 538 U.S. 84, 92 (2003). Plaintiffs do not argue that the Texas Legislature intended for Chapter 62 to be punitive in nature, and this Court joins others in finding that it did not.[5] *See, e.g.*, *Rodriguez*, 93 S.W.3d at 68–69 (presuming that the Legislature's intent was for a nonpunitive statute when it promulgated the 1997 amendment to Texas's sex offender registration statute, given parties' failure to provide evidence to the contrary). Thus, Plaintiffs must put forth the "clearest proof" that the effects of Chapter 62 constitute punishment. The Court finds they have failed to do so.

In determining whether the effect of a statute is punitive, the Supreme Court has identified

---

[5] The first enacted version of the Texas Sex Offender Registration Program in 1991 was focused on public safety and providing an easier mechanism to identify repeat sexual offenders. *See* Crim. Justice, Bill Analysis, Tex. S.B. 259, 72nd R.S. (1991) ("Currently, 12 states have registration programs for sex and narcotics offenders. A substantial and disproportionate amount of the total number of serious sex offenses are committed by a relatively small number of multiple and repeat sex offenders. These programs are intended to address the problem that repeat offenders create for society by identifying repeat offenders more easily and monitoring potential repeat offenders.").

seven factors[6] courts should consider. *See Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169 (1963). "These factors, which migrated into our *ex post facto* case law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the *Ex Post Facto* Clauses." *Smith*, 538 U.S. at 97. However, "[b]ecause the *Mendoza–Martinez* factors are designed to apply in various constitutional contexts, [the Supreme Court] ha[s] said they are neither exhaustive nor dispositive, but are useful guideposts." *Id.*

The Supreme Court underwent this *Mendoza–Martinez* factor analysis in *Smith v. Doe*, when it rejected an *ex post facto* challenge to Alaska's sex offender registration statute and held that the statute was nonpunitive. *Id.* at 97–06. Specifically, the Court focused on five of the seven *Mendoza-Martinez* factors as most relevant to its *ex post facto* analysis, namely "whether, in its necessary operation, the regulatory scheme: [(1)] has been regarded in our history and traditions as a punishment; [(2)] imposes an affirmative disability or restraint; [(3)] promotes the traditional aims of punishment; [(4)] has a rational connection to a nonpunitive purpose; or [(5)] is excessive with respect to this purpose." *Id.* at 97.

Regarding punishment, the Supreme Court held that the stigma resulting from the Alaska law "results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public[,]" and that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective

---

[6] Those factors are whether: (1) "the sanction involves an affirmative disability or restraint;" (2) "it has traditionally been regarded as a punishment;" (3) "it comes into play only on a finding of scienter;" (4) "its operation will promote the traditional aims of punishment—retribution and deterrence;" (5) "the behavior to which it applies is already a crime;" (6) "an alterative purpose to which it may rationally be connected is assignable for it;" and (7) "it appears excessive in relation to the alternative purpose assigned." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).

as punishment." *Id.* at 98–99. Next, the Court determined that the law did not impose any physical restraints, and thus it did not "resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Id.* at 100. Finally, the Court noted that the law's rational connection to a nonpunitive purpose—"public safety, which is advanced by alerting the public to the risk of sex offenders in their community"—was the "most significant factor in [its] determination that the statute's effects are not punitive." *Id.* at 102–03. Thus, for these reasons and more the Court ultimately held that the offenders could not show "much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme." *Id.* at 105.

Recognizing this Court's obligation to rely on the Supreme Court's holding in *Smith v. Doe*, Plaintiffs argue that Chapter 62's regime is far more burdensome than the Alaska regime. Plaintiffs therefore argue that despite the holding in *Smith v. Doe*, Chapter 62's more burdensome scheme still renders it punitive in effect. Specifically, Plaintiffs distinguish Chapter 62 in that it requires in-person reporting for registrants; attaches and publicizes a state-sanctioned label of dangerousness; requires registrants to provide DNA samples; restricts certain registrants from being employed at certain jobs; and limits some registrants from living on college campuses or being on a secondary school's campus without notice to the school. Doc. 29., Pls.' Resp., 11–12.

Although the Court acknowledges that some of Chapter 62's requirements are more burdensome than the Alaska statute in *Smith v. Doe*, they do not rise to the level of harshness to constitute punishment. The Fifth Circuit agrees, albeit in unpublished opinions, and has "repeatedly affirmed a district court's dismissal as frivolous the claim that the retroactive application of Texas law requiring sex offender registration and notification violates the *Ex Post Facto* Clause." *King v. McCraw*, 559 F. App'x 278, 281 (5th Cir. 2014) (citing *Hayes v. Tex.*, 370 F. App'x 508 (5th Cir.

2010); *Hall v. Attorney Gen. of Tex.*, 266 Fed. App'x 355 (5th Cir. 2008); *Herron v. Cockrell*, 78 F. App'x 429 (5th Cir. 2003)). While these cases are not controlling precedent, the Court finds them persuasive because they rely on the holding in *Smith v. Doe*, and show the Fifth Circuit's unwillingness to consider Chapter 62 a punitive scheme. *See id.* at 281–82.

Furthermore, based on its own assessment, this Court does not find that any of Chapter 62's requirements that Plaintiffs highlight makes it a punitive scheme. And although Plaintiffs cite to the *Mendoza–Martinez* factors in their briefing, it is difficult to tell under what specific grounds or factors they challenge the law—besides seeking to distinguish certain provisions in Chapter 62 from the Alaska statute in *Smith v. Doe*. *See* Doc. 29, Pls.' Resp., 11–12. Thus, the Court will consider each of those provisions in light of the *Mendoza–Martinez* factors to determine whether they make the statute as a whole punitive in effect.

First, although the labeling of registrants based on a classification system and publicizing those classifications may in theory lead to public shame, "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." *Smith*, 538 U.S. at 98. The state has a legitimate interest in employing these classification levels to ensure that compliance with the different requirements of Chapter 62 are met, depending on the type, number, and severity of the sexual offenses committed. Like in *Smith*, this Court finds that "[w]idespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Id.* at 99. Also, Chapter 62's requirement that some must register and update their information in-person does not turn an otherwise nonpunitive statute into a punitive one. *See Creekmore*, 341 F. Supp. 2d at 661 (citing *Doe v. Pataki*, 120 F.3d 1263, 1285 (2nd Cir. 1997) (holding that New York's sex offender registration statute's in-person

registration requirement did not make the statute punitive)); *see also Shaw v. Patton*, 823 F.3d 556, 568 (10th Cir. 2016) (holding that even though the in-person reporting requirement was more frequent than it was in *Smith,* the Oklahoma sex offender registration statute was not punitive).

Nor do the provisions that require registrants to submit to a DNA sample, limit certain employment for registrants who committed sexual offenses against minors, limit living on college campuses or being on a secondary school's campus without notice to the school make this a punitive scheme. The Supreme Court stated that in conducting this analysis, a statute's rational connection to a nonpunitive purpose is a "most significant" factor in determining whether the statute's effects are punitive. *Smith*, 538 U.S. at 102. It is clear to this Court that all of these requirements—imposed against individuals who have already been convicted of sexual offenses—are rationally connected to serving the state's goal and duty of keeping its citizens safe. In light of the *Mendoza–Martinez* factors and absent the "clearest proof" that the effects of Chapter 62 are punitive, the Court finds that this statute constitutes a nonpunitive civil scheme. Thus, Plaintiffs' *Ex Post Facto* Clause Claim (Count VII), Eighth Amendment Claim (Count VIII), and Double Jeopardy Claim (Count IX) all fail as a matter of law and are **DISMISSED with prejudice.**

2. Plaintiffs' Procedural Due Process Claim (Count I) Fails Because Texas's Classification System is Based Solely on the Registrant's Conviction.

Plaintiffs also bring a procedural due process claim arguing that Chapter 62 does not afford them a hearing or individualized consideration before classifying their present level of dangerousness, via Chapter 62's three-tier classification system. Doc. 4, Am. Compl., ¶¶ 273–81. Defendants counter that the Fifth Circuit, relying on Supreme Court precedent, has held that "[w]hen an individual is convicted of a sex offense, no further process is due before imposing sex offender

conditions." Doc. 18, Defs.' Br. Dismiss, 20 (citing *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir.

2010) (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8 (2003))). Plaintiffs respond that

reliance on *Meza* is inappropriate because that case concerned conditions of federal probation or

parole, not a sex offender registration statute. Doc. 29, Pls.' Resp., 15. The Court ultimately disagrees

with Defendants.

The Court joins other courts in finding that *Meza* is controlling over the issues in this case

because in *Meza* the Fifth Circuit distinguished between situations in which due process is and is not

required before imposing sex offender conditions such as registration and publication. *See Hollier v.*

*Watson*, 605 F. App'x 255, 258 n.12 (5th Cir. 2015) (citing *Meza* for the proposition that Chapter

62 does not violate a citizen's right to procedural due process). In *Meza*, the plaintiff "was not

convicted of a sex offense, and he neither stipulated nor judicially admitted that he sexually assaulted

his murder victim," thus, "he was owed procedural due process before sex offender conditions [could]

attach." *Meza*, 607 F.3d at 401–02. Here, Plaintiffs state that "Plaintiffs were all charged and

convicted before [the 2017 version of Chapter 62] came into effect." Doc. 4, Am. Compl., ¶ 2.

Furthermore, Plaintiffs concede in their Amended Complaint that "[t]ier classifications are based

*solely* on the offense(s) of conviction." *Id.* ¶ 116 (emphasis added). Thus, on these admissions alone

Plaintiffs show that they have already been afforded all that due process requires. *See Conn. Dep't of*

*Pub. Safety*, 538 U.S. at 7 (finding that because "the law's requirements turn on an offender's

conviction alone—a fact that a convicted offender has already had a procedurally safeguarded

opportunity to contest[,]" no further due process was required).

Similarly, in *King v. McCraw*, the Fifth Circuit, applying the principles established in *Conn.*

*Dep't of Pub. Safety*, denied a plaintiff's procedural due process claim challenging Chapter 62. 559 F.

App'x 278, 283 (5th Cir. 2014). The plaintiff in that case argued that Chapter 62 was unconstitutional because it "automatically classified him as a sex offender without notice or any individualized determination of his purported danger to the community." *Id.* at 282. The Fifth Circuit affirmed the trial court's rejection of this claim since his classification as a sex offender was based on his prior conviction where he received the requisite due process. *Id.* at 282–83 (citing *Conn. Dep't of Pub. Safety*, 538 U.S. at 7–8).

Thus, because the tier classifications in Chapter 62 are based solely on Plaintiffs' convictions no further process is due before imposing sex offender conditions. The Court therefore **GRANTS** Defendants' Motion to Dismiss Plaintiffs' procedural due process claim (Count I) and because the Court finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim **with prejudice**.

> ### 3. Plaintiffs' Due Process Claims for Infringement of Fundamental Rights All Fail Because Chapter 62 Does Not Unconstitutionally Interfere with Plaintiffs' Right to Interstate Travel (Count II), Employment (Count III), or Free Speech (Count IV).

Plaintiffs also bring substantive due process claims arguing that Chapter 62 unconstitutionally interferes with their right to travel, employment, and access to free speech through the Internet. Doc. 4, Am. Compl., ¶¶ 282–93. The Court disagrees with Plaintiffs and finds that Chapter 62 does not unconstitutionally infringe with any of these rights.

> #### a. *Right to Interstate Travel*

"Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 901 (1986). "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objecti[ve], or when it uses any classification which serves to penalize the exercise of that right." *Ex*

*parte Mercado*, 2003 WL 1738452, at *5 (Tex. App.—Houston [14th Dist.] Apr. 3, 2003, no pet.) (citing *Attorney Gen. of N.Y.*, 476 U.S. at 901–02). "Travelers, however, do not have a constitutional right to the most convenient form of travel." *Id.* (citing *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991)). Chapter 62's requirements that Plaintiffs disclose their travel plans or comply with registration requirements in other states when traveling does not deny Plaintiffs their fundamental right to interstate travel—at most it makes travel inconvenient. *See Mercado*, 2003 WL 1738452, at *6 ("Merely having to report a change in residence or regular visitation—a minor restriction on one's right to travel—does not deny appellant or other sexual offenders the fundamental right to travel."). Plaintiffs are in fact free to travel within or outside Texas; however, any change in location must be reported to the appropriate law enforcement authority. Tex. Code Crim. Proc. art. 62.055.

With no denial of a fundamental right, the Court is left to decide whether Chapter 62's requirements are rationally related to a legitimate state interest. *See Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 561 (5th Cir. 2017) (stating that rational basis is the default level of scrutiny for substantive due process claims that do not implicate a fundamental right). As previously stated, the state has a legitimate interest in keeping its citizens safe and alerting the public to persons who pose a threat and these reporting requirements are rationally related to that interest. Thus, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' right to travel claim (Count II) and because the Court finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim **with prejudice**.

    b.  *Interference With Employment Opportunities*

Plaintiffs' arguments regarding Chapter 62's purported infringement on their employment opportunities are two-fold: (1) Chapter 62 contains explicit limits on employment that are

unconstitutional; and (2) Chapter 62's public reporting requirements lead to general difficulties in pursuing employment opportunities based on their sex-offender status (e.g., employer's unwillingness to hire them, bank's unwillingness to loan money, and landlord's unwillingness to lease retail space). Doc. 4, Am. Compl., ¶¶ 153–79. The Court finds both arguments unpersuasive.

For one, Plaintiffs argue that Chapter 62 explicitly bars Plaintiffs from certain employment such as operating a bus, taxi, or limousine; working at an amusement park; or providing unsupervised services in the residence of another. Doc. 4, Am. Compl., ¶ 153 (citing Tex. Code. Crim. Proc. art. 62.063). First, Plaintiffs do not point to and the Court does not find any individual Plaintiff who has been denied employment under this provision. Second, and more importantly, Chapter 62's limitations on employment in Article 62.063 only apply to registrants with a reportable conviction or adjudication of an offense against a child under the age of fourteen. Tex. Code Crim. Proc. art. 62.063(b). The Supreme Court has "indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." *Conn. v. Gabert*, 526 U.S. 286, 291–92 (1999). The Court finds that this bar on certain types of employment does not implicate a fundamental right, and in any event, the provision is reasonable and satisfies rational basis review by only restricting child sex offenders from employment situations where they would interact with vulnerable individuals such as children. *See Jones v. Bd. of Comm'rs of Al. State Bar*, 737 F.2d 996, 1000 (11th Cir. 1984)(finding that the Supreme Court "has never held that the right to pursue a particular occupation is a fundamental right," but instead "applie[s] the traditional rational basis review to such statutory classifications.").

Next, Plaintiffs argue that Chapter 62 impedes on their fundamental right to seek and

maintain employment because their sex-offender status makes it difficult to pursue employment opportunities (e.g., get a loan, lease out retail space, interview for jobs). Doc. 4, Am. Compl., ¶¶ 154–79. Plaintiffs cite to *Board of Regents of State College v. Roth*, for the proposition that due process is violated "where state actors make statements of accusation against a person that has the capacity to seriously damage his future employment prospects due to stigma imposed without the opportunity to respond." Doc. 29, Pls.' Resp., 18 (citing 408 U.S. 564, 572 (1972)). In *Board of Regents*, the Supreme Court recognized that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." 408 U.S. at 573 (quoting *Wis. v. Constantineau*, 400 U.S. 433, 437 (1971)).

Here, however, Plaintiffs' difficulty in attaining work is not due to any provision in Chapter 62 or state action, but from the fact that Plaintiffs are all convicted sex offenders—convictions that gave Plaintiffs the opportunity to be heard and complied with due process. The state, for example, did not pass any regulations (except for the ones affirmed above) explicitly prohibiting Texas employer's from hiring persons on the sex-offender database. The Court acknowledges the difficulty Plaintiffs face in pursuing employment opportunities in light of their criminal history; however, the Supreme Court recognized in *Smith*, that "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." 538 U.S. at 101. Thus, the Court finds that any difficulties Plaintiffs encounter in seeking employment based on their sex-offender status was based on their convictions to which they have already been afforded due process and cannot be the basis for a cognizable due process claim. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' right to employment claim

(Count III) and because the Court finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim **with prejudice**.

  c.  *Freedom of Speech*

  Plaintiffs next challenge Chapter 62's requirements that Plaintiffs must disclose their "online identifier"[7] on social media sites to authorities. Tex. Code Crim. Proc. arts. 62.0061, 62.051(c)(7), & 62.0551. They argue that these provisions violate the First Amendment's free-speech protections by burdening their speech, deterring them from exercising their rights, and eliminating their opportunity for anonymous online speech. Doc. 4, Am. Compl., ¶¶ 196–207, 291–93.

  As an initial matter, the Court must determine whether the regulation at issue is content-based, and thus subject to strict scrutiny, or content-neutral, and thus subject to the more lenient intermediate scrutiny. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of ideas or views expressed are content based. By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* at 643. Furthermore, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

  Here, although Chapter 62's limitations apply only to sex offender registrants, the Court finds

---

  [7] "Online identifier," as defined by the Code of Criminal Procedure, means "electronic mail address information or a name used by a person when sending or receiving an instant message, social networking communication, or similar Internet communication or when participating in an Internet chat." This includes an "assumed name, nickname, pseudonym, moniker, or user name established by a person for use in connection with an electronic mail address, chat or instant chat room platform, commercial social networking site, or online picture-sharing service." Tex. Code Crim. Proc. art. 62.001(12).

that they are content-neural because they are not aimed at limiting the discussion of certain topics, ideas, or opinions. *See Doe v. Shurtleff*, 628 F.3d 1217, 1223 (10th Cir. 2010)(finding similar provisions in Utah's sex offender registration statute to be content-neutral). Thus, as a content-neutral regulation on speech, the Court will uphold the requirements if they "(1) serve[] a substantial governmental interest and (2) [are] 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.'" *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000) (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)).

Ultimately, the Court finds that Chapter 62 passes this test. First, the state has a substantial governmental interest in protecting vulnerable individuals like children from engaging in anonymous conversations with predators over the internet, and thus the need for the disclosure of "online identifiers." *See Smith*, 538 U.S. at 99.

Second, Chapter 62's requirements are narrowly drawn to serve that interest. "[T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799. Here, the statute requires disclosure of email addresses and instant messaging and chat room user names that the registrants use online and requires that they update the proper authorities with new online identifiers. Tex. Code Crim. Proc. arts. 62.001(12), 62.0551. Absent these requirements, the state's ability to investigate a registrant's online activity would be diminished. Furthermore, Chapter 62 excludes online identifiers from being disclosed publicly, Tex. Code Crim. Proc. art. 62.005(b), and thus Plaintiffs are not required to reveal their identity to the general public before engaging in free speech. *Cf. Buckley v. Am. Constitutional Law Found. Inc.*, 525 U.S. 182, 199–200

-23-

(1999) (holding that provisions that required disclosure of identity to the general public unconstitutionally burdened speech as opposed to provisions that required disclosure only to the state); *see also Harris v. State*, 985 N.E.2d 767, 776 (Ind. App. 2013) (finding similar provisions in Indiana's sex offender registration statute constitutional because the online identifiers are not publicly disclosed).

Thus, the Court finds that Chapter 62's content-neutral regulation on speech is narrowly drawn to serve a substantial governmental interest. Also, because the state does not publicly disclose the online identifiers, Plaintiffs' freedom of expression is not chilled. The Court thus **GRANTS** Defendants' Motion to Dismiss Plaintiffs' First Amendment claim (Count IV) and because the Court finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim **with prejudice**.

<u>4.</u>     <u>Plaintiffs' Due Process Claims for Vagueness, Impossibility, and Strict Liability (Count V) all Fail Because the Challenged Provisions are Well-Defined and the Texas Penal Code Requires a Culpability Finding.</u>

In Count V, Plaintiffs argue that three portions of Chapter 62 are void for vagueness, are impossible to comply with, or impose strict liability, all in violation of the Due Process Clause. Doc. 4, Am. Compl., ¶¶ 294–98. Specifically, Plaintiffs challenge the requirements that registrants: (1) report changes in personal data such as their addresses, online identifiers, names, physical health, job status, or educational status, Tex. Code Crim. Proc. arts. 62.055, 62.0551; (2) maintain state-issued driver's licence or personal identification card with a current address, *id.* 62.060; and (3) report temporary locations that registrants visit three times or more a month for over forty eight consecutive hours by the end of that month, *id.* 62.059. Based on the Court's review of these provisions and the arguments presented by Plaintiffs, the Court finds that none of these provisions are void for vagueness, are

impossible to comply with, or wrongfully impose strict liability.

First, these provisions are not vague or impossible to comply with. "To satisfy due process, a penal statute must define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. U.S.*, 561 U.S. 358, 402–03 (2010). The provisions that Plaintiffs point to as vague and impossible to comply with are in fact well-defined and clearly list what is required of Plaintiffs to comply with each provision. They state who is covered by the requirements, what information must be disclosed, where the information must be disclosed, and when those disclosures must be made. Further, Plaintiffs' arguments on these issues lack specificity and are not sufficient to overcome the presumption of validity that attaches to legislative enactments such as Chapter 62. *See id.* at 403.

Moreover, Chapter 62 does not impose strict liability for noncompliance with reporting requirements imposed by the statute. Article 62.102 states that a person commits the offense of failing to comply with sex-offender registration requirements "if the person is required to register and fails to comply with any requirement of this chapter." Tex. Code Crim. Proc. art. 62.102(a). Although the statute does not contain a culpable-mental-state requirement, the statute does not explicitly dispense with any mental-state requirement. *See id.* (explaining the offenses for noncompliance and that a person charged under this Article would have the opportunity to go to trial). Thus, Section 6.02(c) of the Texas Penal Code requires that Article 62.102(a) require at minimum recklessness to establish criminal responsibility. *See* Tex. Penal Code § 6.02(c) ("If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal

-25-

responsibility."); *see also Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015) (holding that some finding of knowledge or recklessness does apply to Article 62.102 by virtue of Texas Penal Code § 6.02(c)).

Therefore, the Court finds that none of the challenged provisions are vague, impossible to comply with, or based in strict liability. The Court thus **GRANTS** Defendants' Motion to Dismiss Plaintiffs' due process claim (Count V) and because the Court finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim **with prejudice**.

5. Plaintiffs' "Class of One" Equal Protection Claim (Count VI) as to John Doe #3 Fails Because he has not Been Irrationally Treated Differently Than Similarly Situated Individuals.

In their sole "class of one" equal protection claim, Plaintiffs argue that Texas does not have jurisdiction to require John Doe #3 to register or publish his information, yet it does so in violation of his right to equal protection. Doc. 4, Am. Compl., ¶¶ 299–304. Specifically, Plaintiffs allege that John Doe #3—a current citizen of Minnesota—entered into a plea agreement for a sexual assault while living in Texas in 1993, received deferred adjudication, and had his case dismissed in 2003; however, he continues to be listed as a sex offender in Texas even though he is no longer required to register or be listed as such in Minnesota. *Id.* ¶¶ 314–15.  Plaintiffs argue that these actions by Defendants are arbitrary and capricious. *Id.* ¶ 303.

To state a viable "class of one" equal protection claim, a plaintiff must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned

by express terms of a statute or by its improper execution through duly constituted agents." *Id.* It is unclear from Plaintiffs' Amended Complaint or briefing which similarly situated individuals they allege are intentionally treated differently from John Doe #3. In any case, Plaintiffs' claim fails.

For one, Plaintiffs state in their pleadings that "the state of Texas is treating John Doe #3 *similarly* to other sex offenders on its sex offender registry by allowing his information to be publicly disseminated over the Internet." Doc. 4, Am. Compl., ¶ 304 (emphasis added). This forecloses the argument that John Doe #3 is treated differently from other Texas registrants. Also, even if Plaintiffs are claiming that John Doe #3 is treated differently from other Minnesotan registrants this claim fails because (1) those Minnesotan registrants are not similarly situated—they, unlike John Doe #3, do not have a reportable conviction in Texas; and (2) there is a rational basis for requiring that John Doe #3 register and be listed in Texas—John Doe #3 has a reportable conviction in Texas and Texas has a rational basis for maintaining the registry of those individuals to keep its citizenry safe. Furthermore, if other sex offenders like John Doe #3—those that do not live in Texas and who have completed their registration requirements in their current home state—were somehow no longer required to register or be listed as sex offenders in Texas, then John Doe #3 might assert a proper "class of one" equal protection claim. Plaintiffs, however, present no evidence or allegations of this sort, thus, this claim fails.

Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' "class of one" equal protection claim (Count VI) and because the Court finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim **with prejudice**.

6.      Plaintiffs' Contracts Clause Claim (Count X) Fails Because Chapter 62 Does Not Substantially Impair Plaintiffs' Plea Agreements.

Lastly, Plaintiffs argue that Chapter 62 violates the Contracts Clause by adding punishment conditions in violation of many of the Plaintiffs' plea agreements. Doc. 4, Am. Compl., ¶ 310. Specifically, Plaintiffs argue that they "had a reasonable expectation that the plea bargains they entered into in resolving their underlying criminal cases would not result in the imposition of additional punishment at a later date." Doc. 29, Pls.' Resp., 22.

Article 1, Section 10 of the Constitution provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. In determining whether a state has impaired a contract, courts employ a two-part test considering (1) "whether the state law has operated as a substantial impairment of a contractual relationship," and if so, (2) "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (citations and quotation marks omitted).

Here, Plaintiffs' arguments fail at step one because Chapter 62 does not substantially impair any pre-existing contractual agreements. As previously discussed, the Court does not find that Chapter 62 is punitive in effect, and thus, on its face Chapter 62 does not impair any agreement because it does not impose additional punishments that would violate or conflict with any existing plea agreement. *See* discussion *supra* Section III.C.1; *see also Am. Civil Liberties Union of Nev. v. Masto*, 670 F.3d 1046, 1061 (9th Cir. 2012) (finding that Nevada's sex offender registration program did not violate the Contracts Clause). Moreover, even if Chapter 62 substantially impaired the pre-existing plea agreements, Chapter 62 is drawn in an appropriate way of advancing the state's significant and legitimate public purpose of keeping its citizenry safe and informed of the locations

-28-

of individuals it deems dangerous. *See Smith*, 538 U.S. at 102–04. Therefore, the Court **GRANTS**

Defendants' Motion to Dismiss Plaintiffs' Contracts Clause claim (Count X) and because the Court

finds that allowing Plaintiffs to replead this claim would be futile, the Court **DISMISSES** the claim

**with prejudice**.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(1)

and **DISMISSES with prejudice** all of Plaintiffs' claims against Governor Abbott. The Court also

**GRANTS** Defendants' Motion under Rule 12(b)(6). Because the Court finds that allowing Plaintiffs

the opportunity to replead would be futile, the Court **DISMISSES with prejudice** all Plaintiffs'

claims. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.

2002).


SO ORDERED.

SIGNED: November 19, 2018.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE